COMMUNITY UNIT SCHOOL DISTRICT NO. 60, WAUKEGAN PUBLIC SCHOOLS, LAKE COUNTY, Plaintiff-Appellee, *v.* ELAINE F. MACLIN *et al.*, Defendants-Appellants.

Second District    No. 81-489

Opinion filed May 10, 1982.

Peter M. Katsaros and Wayne Schwartzman, both of Hirsch and Schwartzman, of Chicago, for appellants.

Donald M. Lonchar, Jr., and John G. Radosevich, both of Lonchar, Nordigian & Radosevich, of Waukegan, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Elaine F. Maclin, a tenured teacher, brings this appeal from the judgment of the circuit court of Lake County which upheld her dismissal by the school board of Community Unit School District No. 60 (hereinafter School Board).

Elaine F. Maclin was a teacher in various elementary schools over a period of more than 25 years. She had a B.A. degree from Spellman College in Atlanta and did graduate work at Minnesota and Southern California Universities. She had received an M.A. degree from Columbia University. She had taught kindergarten and fifth and sixth grades.

During the 1977-78 school year, Maclin taught fifth grade at Andrew Cooke School. In the 1978-79 school year, pursuant to a faculty desegregation plan, she was assigned to Oakdale School, to teach fifth grade.

Gene Hawkins, principal of Oakdale School, testified that in the spring of 1979, particularly March through May of that year, there were disciplinary problems with Mrs. Maclin's class and that parents had complained of lack of progress of their children. He testified that because of these problems, he consulted with Maclin and did some demonstration teaching for her. In March and May of 1979, he made formal observation of her classes and in his testimony indicated that while these were formal visits, he had been concerned about and had visited her classes on many other occasions. He testified that Maclin had complained that the children were inattentive and were not doing their work. He observed the class frequently and made some suggestions. On March 6, 1979, in a formal observation visit, he noticed lack of attention and that the class was very noisy. At that time he suggested that Maclin devise a folder system, with a folder for each child, with numbers assigned to each assignment made to them so that it would be easier to keep track of assignments which were not completed. In April of 1979, Hawkins wrote another letter to Maclin again suggesting the use of individual folders with numbered assignments, and called attention to the complaints of parents and Maclin's own lack of punctuality.

On April 24, 1979, a meeting was held at the office of George Latham, assistant school superintendent, with Maclin and Hawkins being present, to consider deficiencies in Maclin's performance as a teacher. Following this, a letter was sent to Maclin by Latham outlining her deficiencies in teaching and her absenteeism and reminding her that she had previously been a source of concern in 1977 for her deficiencies as a teacher and warning her that if her deficiencies continued she might face a recommendation for dismissal.

On May 17, 1979, Hawkins again, in a written memorandum, called Maclin's attention to the lack of discipline in her classes and the fact that some students were not completing their assignments. On June 8, 1979, Maclin wrote to Hawkins telling him she thought his "close monitoring" of her class showed that a dual set of standards existed, one for her and one for other members of the faculty, and that she felt his allegations "are slanderous, lack substance and are biased." With this letter she included a note stating that copies of her letter were being sent to Operation PUSH, NAACP and the Urban League, and that she would be "selecting a lawyer from the Chicago area" to represent her. Upon receipt of this letter, Hawkins wrote to Latham requesting either that Maclin be dismissed or that she be reassigned to another school.

On June 26, 1979, after the 1978-79 school year was ended, a notice

was sent to Maclin by the School Board designated "Second Remedial Notice" calling her attention to the previous remediable notice of January 1977 (of which we have no record), indicating deficiencies in her teaching performance and stating that she was directed to remedy and remove her deficiencies as listed in the attached memorandum entitled "Deficiencies in Teaching Performance." These consisted of the following:

Failure to (1) maintain proper discipline; (2) organize her classroom for effective instruction; (3) present clear explanations and instructions; (4) satisfy parents of her pupils; (5) keep up-to-date test records, making it difficult to monitor progress in her class; (6) number assignments, maintain pupil folders and communicate with parents as to assignments not done; (7) respond in a positive manner to supervisors' suggestion; (8) arrive at school on time, and (9) establish a satisfactory work attendance record. In the School Board's letter of June 26, Maclin was informed that she had until November 2, 1979, to remedy the deficiencies noted above.

School began on August 28 for the 1979-80 school year. In September—immediately after Labor Day—Hawkins notified Maclin that as part of her remediation program her classes would be observed on certain occasions by selected faculty supervisors, specifically Mrs. Morrissey for reading and language, Mrs. Reinhardt for social studies and Mr. Witt for science and mathematics, as well as himself, and that she would be notified in advance when the observations were to be made.

Pursuant to this program, Mrs. Morrissey observed Mrs. Maclin's class in reading on September 14. The day before, she had notified Maclin she would be observing her class and they had a "pre-observation" conference in which Maclin advised Morrissey what the class would be reading. Accordingly, Morrissey visited Maclin's reading class. In a letter to Maclin dated September 21, following the observation, with copies to Hawkins and Latham, Morrissey commented in summary as follows on the class she observed: (1) Maclin failed to maintain proper discipline—students were talking instead of listening; (2) there was a lack of intelligent instruction in reading; (3) there was a failure to present clear explanations and instructions—time was wasted in giving assignments.

Mrs. Reinhardt observed Maclin's class in social studies on September 19 and 24, following which she wrote a memo to Maclin, copies to Hawkins and Latham, in which Reinhardt noted that Maclin's teaching showed a lack of preparation, that she introduced the concept of latitude and longitude, which was actually prescribed for the following day and had gotten latitude and longitude reversed. The use of the globes in the geography lesson was poor due to lack of instruction and there was a great deal of boredom and inattention. Maclin handed out maps but there was no adequate explanation as to the use of the maps, and it was Reinhardt's impression that the children were confused. On September

24, Reinhardt returned for observation of the same area of study. At that time, she testified, another mistake was made in the maps when Mrs. Maclin handed out ditto sheets with a sketch of the globe on them, which placed the equator at the latitude of 10 degrees instead of 0 degrees. The result was that the two halves of the globe denoting the two hemispheres could not be put side-by-side because the equator line was askew. Although Maclin verbally corrected this error, the children were unable to use the ditto sheets properly. Reinhardt came again on October 18 to observe the class. Her comments on that observation did not indicate any specific errors, but did indicate that Maclin continued to have trouble getting the children's attention and she complained that they were misbehaving. Reinhardt gave it as her opinion, based on 20 years of teaching and observing, that Maclin was not qualified to teach in the school district. Morrissey again observed Maclin's reading class on October 3. Maclin was notified in advance of this visit. In her report about this session, Morrissey noted that the instruction was poor and the class discipline deteriorated as the class went on. She ascribed the poor quality of instruction to the lack of preparation and noted that Maclin should have been prepared since she had advance notice of Morrissey's intended observation. At the end of her testimony, in response to the direct question, she gave her opinion that Maclin was not qualified to teach in the school district. In reply to the question: "On what do you base this opinion?" she replied: "I base my opinion on my observations and my conversations with Mrs. Maclin. Mrs. Maclin cannot thoroughly prepare lessons. She cannot maintain discipline. She cannot organize her class for effective instruction. She makes mistakes. She has a negative attitude toward students' ability to learn and a negative attitude toward receiving help to improve her teaching."

Mr. Witt, mathematics and science supervisor for the School District, observed Maclin's class on September 28, pursuant to a "pre-visit conference" on September 25. As a result of his observation he wrote a report commenting that Maclin caused "confusion and misunderstanding of the questions you asked and your procedure of cutting off answers before the child could communicate what he or she meant." He also noted haphazard use of the teaching materials and misunderstanding as to the assignment, which was not corrected. Much time, he noted, was spent correcting "small behavior problems." A lab problem could not be done because Maclin had not brought along the necessary materials even though she had gone over the intended lesson in a preconference with Witt. Witt believed the children were confused about the concept of the earth's various layers, and this was not corrected by Maclin. On November 1, he observed her class again. He noted a mistake in Maclin's reference to "area" when she actually meant "volume." He noted that a worksheet was

distributed but before it was completed another worksheet was distributed having to do with the previous day's lesson. Toward the end of the hour, the class began to be restless and the noise level increased. Maclin then explained the problem on the second worksheet but her explanation was wrong. It involved measuring a line segment, first to the nearest inch, then to the nearest half-inch, and finally to the nearest quarter-inch. The children apparently did not understand the concept of "to the nearest." She told them to disregard the second and third parts of the problem because she had not taught them "estimations," and she would take that up another day. As a result, the students who had done the problem correctly thought they had done it wrong and started over. Witt noted that the noise level was loud and some students wandered about the room. At the end of the testimony, he gave as his opinion, based on his education and experience and his observations of Maclin, that she was not qualified to teach in the school district.

Mr. Hawkins, the school principal, observed Maclin's class on October 11 and 25. She had advance notice of these visitations. He noted that Maclin did not get the children's attention before beginning to explain the lesson, children used ballpoint pens on the maps instead of the pens with washable ink, so that they could be erased, and that only six out of 24 students did the assignment correctly—six did not do it at all and the other 12 did it partly right. Hawkins visited Maclin's class again on October 25. This was a library session. He noted the children were noisy and inattentive and that upon returning from the library, instead of proceeding with the assignment that had just previously been given on language and spelling, Maclin went into another social studies' lesson and had the children listen to a tape. Nothing was done with the actual assignment that had just previously been made. He noted that a mistake was made in locating a city by longitude and latitude. This was thought by the children to be Cairo and Mrs. Maclin agreed with this answer. However, upon playing the tape back the class learned that the correct answer was Alexandria. He noted that if Mrs. Maclin had properly prepared for this lesson she would not have made this mistake. Again, he noted discipline problems. In his testimony, Hawkins referred to visits he had made to Maclin's classroom the previous school year, March through May of 1979, as the result of her poor teaching and inability to keep order. He gave it as his opinion that she was not qualified to teach in the school district because of lack of organization and poor preparation and too many disciplinary problems.

On November 13, 1979, Maclin was given notice that she was dismissed as a teacher in the school district based on the following charges:

"1. You have failed to remedy deficiences which were brought to your attention in the Notice to Remedy mailed to you by certified mail on June 26, 1979.

2. You are negligent.

3. You have been insubordinate and have failed to follow the instructions of your supervisors and cooperate with them.

4. In the opinion of the Board of Education, you are not qualified to teach.

5. In the opinion of the Board of Education, your dismissal is in the best interests of the school."

On the same date, Maclin was provided with a bill of particulars as to charge (1)—failure to remedy deficiencies—she was furnished a copy of the various classroom observations of Morrissey, Reinhardt and Witt, made during the period of remediation, indicating Maclin's failings during that period. As to charge (2)—that she was negligent—this was based on Maclin's failure to properly supervise students and maintain order. Charge (3)—that she was insubordinate—was particularized by the allegations that she had failed to follow directions from Mr. Hawkins and that she had verbally resisted his suggestions and directions. Charges (4) and (5) were supported by a statement that she was lacking in judgment, did not maintain order and her understanding of her academic subject matter was so deficient that there was no possibility within the foreseeable future that she could provide competent instruction, all as evidenced by the reports of her supervisors following classroom observation.

An administrative hearing was held on February 5, 1980, involving numerous exhibits and over 1,400 pages of testimony and argument. At the end of the hearing, the hearing officer held that the charges were not proved and that Maclin should be reinstated as a teacher.

The School Board immediately appealed the hearing officer's decision to the circuit court. After reviewing the testimony and the exhibits, the circuit court reversed the hearing officer's decision as being against the manifest weight of the evidence and affirmed Maclin's dismissal by the School Board. This appeal followed.

■■ At the outset, we must dispose of the motion filed by the School Board to strike the appellant's brief on the ground that it is "blatantly argumentative and replete with misstatements of the record" and, therefore, violative of Supreme Court Rule 341(e)(6) (73 Ill. 2d R. 341(e)(6)). There are certainly some instances of argumentative material, such as referring to Hawkins' "team" of evaluators and the comments in Maclin's brief regarding Hawkins' hostility and lack of fairness. During cross-examination of Hawkins, defense counsel for Maclin asked, in a leading manner, if Hawkins had not told Maclin the day before the evaluation of

October 25 that he would be making negative remarks about her teaching. Hawkins replied that no such conversation ever took place. Nevertheless, defense counsel dwells on Maclin's testimony that "he did make the comment that 'well when he came to the room he would make negative remarks.'" It is difficult to believe that a principal would tell the teacher *beforehand* that he was coming to her room to make negative remarks about her teaching. This statement is not credible, and since Hawkins denied that any such remark was ever made, it should not have been argued in the brief as a basis to show prejudice as if it was an established fact.

■■ The racial issue was also raised in an improper manner in the Maclin's brief. There is no mention of this issue in the administrative hearing and the first mention of it is Maclin's letter to Hawkins of June 8, where she not only accused him of bias but made it plain that she meant racial bias by appending a note to her letter stating that she was sending a copy of that letter to Operation PUSH, NAACP and the Urban League, and would soon be hiring a lawyer to represent her. This part of the appellant's brief is certainly objectionable since it is raised as an issue for the first time in the appeal brief and is not supported by any evidence whatsoever and is purely argumentative. While we do not grant the motion to strike the appellant's brief—a drastic remedy—we find it objectionable in the respects noted above.

We now come to the appeal itself. Maclin contends that the circuit court erred in finding the decision of the hearing officer to be contrary to the manifest weight of the evidence in that the court substituted its judgment for that of the hearing officer as to the credibility of the witnesses on the question of Maclin's progress toward remedying her deficiencies and also as to the reliability of the evaluation process.

The best way to evaluate these contentions is by analyzing the exhibits and the testimony. The hearing officer found that the charge of vandalism in exhibit A in the "Notice to Remedy" was not relevant to the remediation period of June 26 to November 2. That, we think, is itself an irrelevant finding because the charge of vandalism was not a ground for dismissal but was simply a basis to the notice to remedy deficiencies. This is also true of alleged deficiencies which occurred while Maclin was teaching fifth grade in the spring of 1979. These deficiencies merely explained the notice to remedy and were not charges justifying her dismissal.

The hearing officer found that: "The evidence presented by the board did not substantiate the charge that she was 'creating confusion and doubt on the part of her pupils.'" This again is not an exact charge in the notice of dismissal nor is it a noted deficiency. The deficiency noted was: "You have failed to present clear explanations and instructions to your

pupils in the classroom, thus creating confusion and doubt." The evidence that Maclin's explanations and instructions were confusing, erroneous and incomplete was substantial and it is reasonable to suppose that confusion and doubt would follow on the pupils' part from the confusing, unclear and incomplete explanations and instructions. We think, based on the observations made by the three supervisors, which were referred to and made a part of the bill of particulars, and also by the principal, Hawkins, that the circuit court was correct in holding that the hearing officer's finding that this deficiency was not established by the evidence is erroneous and is itself against the manifest weight of the evidence.

The hearing officer's opinion is somewhat hard to follow since he confusingly switched back and forth in his decision between "deficiencies in teaching performance", listed as exhibit A, and the charges set forth as the actual basis for dismissal. Nevertheless, we find substantial support in the bill of particulars and in the notice of teaching deficiencies to support several of the charges which were the basis of the dismissal. The hearing officer indicated (without clearly so ruling) that the lack of progress of Maclin's students in the fifth grade during the spring of 1979 and their failure to keep up with the other class in reading certain magazines could not be considered in this case, since those deficiencies preceded the remediation period. However, according to Mrs. Morrissey (the reading supervisor) deficiencies were noted in Maclin's teaching of reading in the months of September and October, 1979, during the remediation period. The fact that certain other specific reading deficiencies were noted in April and May of 1979 and were part of the prior deficiencies noted in Maclin's teaching performance, merely establishes that there was a basis for the June 26 remediable notice letter. The lack of reading skills noted in April and May of 1979 was a deficiency to be remedied during the period from June 26 to November 2, 1979, and was pertinent as establishing a basis for the remediable notice letter. Failure to remedy the deficiencies noted in the document entitled "Exhibit A—Deficiencies in the Teaching Performance of Mrs. Elaine F. Maclin" specifically referred to her fifth grade teaching in the spring of 1979, and was the basis only of charge 1 of the charges which were the basis of her dismissal. We think on the evidence of the observation reports above referred to it could fairly be said that this charge was justified.

Charge 2—negligence—was also proved by the classroom observations, which indicated several instances of lack of preparation and failure to keep order.

Charge 3—the charge of insubordination and failure to follow instructions—is more dubious. The bill of particulars refers to the failure to establish a folder system; however, Maclin did attempt to establish a folder system after the 1979 fall semester began. It was not a very

satisfactory system, judging from the exhibits before us. The folders show the lack of thoroughness and follow through which the supervisors complained of in other respects. However, the attempt to establish something along the lines suggested by Mr. Hawkins does show some effort to comply with instructions. The folders, in our opinion, tend to show rather poor organization, rather than insubordination.

Charges 4 and 5—"you are not qualified to teach" and "your dismissal is in the best interests of the school"—are conclusions, not proper charges. However, if proved by the evidence, they would be proper reasons for dismissal. The evidence adduced at the hearing seems to justify these conclusions. The bill of particulars cites poor judgment in preparing for and conducting classes and in keeping order in the classroom and refers to Maclin's deficient understanding of the subjects she was teaching. As indicated in the bill of particulars, these deficiencies in judgment, inattention to detail and failure to maintain discipline, are serious. Deficiency in judgment and lack of system after so many years of teaching may suggest an irremediable condition. On the basis of the record before us we can only agree with the conclusion of the school board that Maclin's understanding of the academic subjects which she had been assigned to teach was "so defective that there is no possibility within the foreseeable future that you can provide competent instruction in the classroom."

Maclin invokes the case of *Board of Education v. Illinois State Board of Education* (1980), 82 Ill. App. 3d 820, a decision of this court. That case involved a teacher by the name of Murray who was given notice to remedy his deficiencies on February 22 and was dismissed for failure to do so on April 4. The hearing officer reinstated him and the circuit court reversed. On appeal, this court reversed the circuit court, finding that Murray had not been given sufficient time to remedy his shortcomings and that the hearing officer's decision was not against the manifest weight of the evidence.

However, there are significant differences between the case before us and that of Murray. In that case, the evaluation reports indicated that Murray was making some improvement. In fact, one evaluator's comment was somewhat complimentary. This was not so with Maclin. While the hearing officer gave his opinion that she had made "some" progress in maintaining discipline in her classroom, the observation reports of the faculty members who observed her classes provide no ground for this conclusion and the evaluators were obviously not of that opinion. This conclusion by the hearing officer does not appear to be in accord with the testimony of Maclin's superiors who observed her. Moreover, in the case of Murray we found that the deficiencies were remediable but that Murray had not been given enough time—only 41 days—between the notice of his deficiencies and his discharge. In the case before us, Maclin

was notified of her deficiencies on June 26, and her remediable period extended to November 2. While school was not in session during the period from June 26 to August 28, she did have time during this period to consider the deficiencies noted by the school authorities and to plan to remedy them. In any event, however, the actual time between the beginning of the 1979-80 school term and the end of the remediable period—August 28 to November 2—was 64 days, considerably more than the 41 days in Murray's case. Another difference between Murray's case and the present case is that in Murray's case only 15 days elapsed between the notice to remedy and his final observation. In Maclin's case, the first observation was by Mrs. Morrissey on September 14 and the last observation was by Mr. Hawkins on October 25, a period of 41 days during which her classes were observed by Morrissey, Reinhardt, Witt and Hawkins. Thus, we think Maclin was given fair treatment. While general principles are helpful in these cases in establishing the ground rules, the actual resolution of teacher dismissal cases depends on the facts and circumstances of the particular case. We believe this case differs sufficiently from Murray's case in its facts to justify a different result. If Murray's case may be regarded as a close case with the balance tilting slightly in favor of the teacher, we think in the present case the balance tilts definitely in favor of the School Board.

■■ In this case, Maclin's deficiencies were fundamental and of long standing having to do with her own mental discipline and her lack of grasp of her subjects. These deficiencies did not appear suddenly—they existed and were called to her attention as far back as 1977. Moreover, her defensive attitude—founded on her belief that some of the criticism against her was racially motivated—created an atmosphere which definitely worked against remediation since she was thereby led to assign the criticism to outside influences she could not control. A careful reading of the testimony and the exhibits supports the opinion of the circuit court that the hearing officer's decision was not in accord with the manifest weight of the evidence adduced at the hearing. We are in accord with the circuit court's conclusion that Maclin's dismissal was justified. The judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

NASH and REINHARD, JJ., concur.