THE BOARD OF EDUCATION, NILES TOWNSHIP HIGH SCHOOL DISTRICT NO. 219, COOK COUNTY, Plaintiff-Appellant, *v.* ALBERT A. EPSTEIN *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 78-507

Opinion filed May 29, 1979.

Marvin J. Glink, and Peter M. Rosenthal, both of Ancel, Glink, Diamond & Murphy, P. C., of Chicago, for appellant.

Gilbert Feldman, of Cornfield and Feldman, of Chicago, for appellee Arnold Agnos.

William J. Scott, Attorney General, of Chicago (Myra Turner, Assistant Attorney General, of counsel), for appellee State Board of Education.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

Arnold Agnos, an English teacher, successfully defended himself against dismissal charges in a hearing held before Albert Epstein, a hearing officer selected from a list submitted by the State Board of Education, on charges filed by Agnos' employer, the Board of Education of Niles Township High School District No. 219, Cook County (hereinafter referred to as the District). The District filed an action for administrative review in the circuit court of Cook County, which upheld the hearing officer's determination that the evidence produced did not warrant dismissal. The District appeals from that judgment. For the reasons stated below, we affirm.

The subject hearing was held under the new procedure specified in section 24—12 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 24—12), which replaces the former procedure under which a local school board would hold a hearing on charges it had brought and make its own determination. Under the new procedure, the local board of education approves a motion to seek dismissal of a teacher and schedules a hearing before a disinterested hearing officer. After receiving a notice of the charges, the State Board of Education provides a list of five prospective, impartial hearing officers from which the local board and the teacher each strike one name until only one remains. Prospective hearing officers must be accredited by a national arbitration association and must not reside in the school district involved. The decision of the hearing officer is final under the statute unless an administrative review is taken.

The District contends that the hearing officer usurped powers reserved

to local school boards under the School Code as amended in that he overruled the District's determination as to the type of conduct or deficiency which constitutes cause for the discharge of a tenured teacher. The foundation of this argument is that under prior practice it was the local school board that adjudicated such matters and that the disposition of dismissal cases necessarily involves both a determination of what facts are established by the evidence and of whether such facts constitute cause for dismissal. The District makes a spirited argument that, under the amendments to the Code, the only power transferred from local boards to the hearing officer is the power to find facts, so that the power to determine what constitutes cause remains with local boards.

■■ The weakness of this argument lies not in any particular wording of the statutory provisions involved, but rather in their clear practical significance. Only two actions of a remotely adjudicatory nature are called for under the new procedure, a vote by the local school board to seek a teacher's dismissal based on specific charges and a decision by a hearing officer after a full presentation of evidence. The District contends that the decision to seek dismissal constitutes a determination that, if the evidence establishes that the teacher engaged in any of the conduct alleged, his dismissal is warranted, so that the allegations themselves constitute a determination that the conduct alleged constitutes cause. Such a determination, however, made without benefit of the facts in the particular case, is clearly unworkable, because the determination as to whether certain conduct constitutes cause must inevitably depend on surrounding facts and circumstances. This is because the definition of "cause" is a "substantial shortcoming" so that dismissal may not be based on charges that are trivial (*Kreiser v. Police Board* (1977), 69 Ill. 2d 27, 370 N.E.2d 511; *Fox v. Illinois Civil Service Com.* (1978), 66 Ill. App. 3d 381, 383 N.E.2d 1201; *Fornuto v. Police Board* (1976), 38 Ill. App. 3d 950, 349 N.E.2d 521, *appeal denied* (1976), 63 Ill. 2d 556). Accordingly, it is necessary to " 'evaluate the gravity of the violations and decide if the infractions were so substantial as to constitute cause for discharge.' " *Hardaway v. Civil Service Com.* (1977), 52 Ill. App. 3d 494, 498, 367 N.E.2d 778, citing *Petraitis v. Board of Fire & Police Commissioners* (1975), 31 Ill. App. 3d 864, 335 N.E.2d 126.

Thus, in *Kreiser,* proven misconduct by a police officer was held not to constitute grounds for discharge because it was not sufficiently related to his official duties, and in *Fox,* proven misconduct by an employee of the Department of Revenue was held not to constitute cause because her actions appeared to have been provoked. As stated in *Caliendo v. Goodrich* (1975), 34 Ill. App. 3d 1072, 1076, 340 N.E.2d 560, "A defendant before an administrative agency is entitled to have that body base its decision upon evidence received at the hearing." In that case a police

officer's involvement in a shooting incident while on vacation was evaluated strictly on the basis of evidence before the administrative panel and held not to be of sufficient gravity to warrant dismissal.

To regard a school board's charges against a teacher as determinations of cause would be to ignore the fact that these determinations were made without an evidentiary basis and not only would be irreconcilable with the authorities discussed above, but also would lead to predictably unrealistic results from mechanically applying such abstract standards. For example, the second and third charges in the present case allege failures to perform certain tasks. Obviously, even if the evidence of such failure were conclusive, it would be unreasonable to conclude that dismissal of the teacher was required if other evidence was also produced which showed a good reason for such failure.

■■ It must be concluded that no provision is made in the statutes for a determination of cause by local school boards. Only one decision based on the evidence submitted is provided for, and that is the decision of the appointed hearing officer.

In attacking that decision, the District contends that it was contrary to the manifest weight of the evidence presented at the hearing.

The charges against Agnos were first listed in a September 9, 1974, "notice of remediation." A year later, the same charges, based on alleged continuing misconduct, were the substance of the motion to seek his dismissal. Agnos was charged with:

(1) Negligence in promptly grading and returning student work;

(2) Failure to maintain necessary and proper records of student attendance and performance as required under the School Code, Section 24—18, Board policy 4116.16, and the Niles East Teachers Handbook, Page C-2, Paragraph D;

(3) Failure to notify parents of unsatisfactory academic work as required by Board policy 4116.16;

(4) Making statements and expressions and/or conducting himself in a manner tending to demean, insult and badger students at Niles East.

A fifth item was added to the list in the motion to seek dismissal, which alleged that the interests of the school district required his dismissal.

Section 24—18 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 24—18) provides that teachers shall keep daily registers of attendance in the form prescribed by the Superintendent of Public Instruction, and shall turn in such registers at the end of the school term. Niles Township High School Board of Education Policy No. 4116.16 provides in pertinent part that teachers shall keep daily records of student attendance and teachers shall, at prescribed intervals, prepare reports to parents on the academic progress of students and such other reports on student performance or

achievement as the Superintendent may from time to time require. The Niles East Teachers' Handbook provides that teachers are responsible for keeping clear and concise records "in their attendance books as well as submitting attendance cards daily," and "are to send progress reports of students who are in danger of failing"; no student may be failed unless such notice has been sent to the parents and such notices "must be sent during the 9th and 15th weeks of each semester."

The evidence most damaging to Agnos with respect to the first charge came from student Robert Silverman, who testified that he had kept a written record of tests taken and returned during the 1974-75 school year. Silverman stated that six or seven of approximately 16 tests he took in Agnos' class that year were never returned. He conceded, however, that after these tests Agnos went over the questions most of the time in class, sometimes spending an entire class period in that way. Silverman also stated that he had not complained about nonreturn of these tests until after he had received his final grade for the course.

Agnos admitted that there had been some delays in returning student work and attributed such delays to his sizeable course load, his involvement in student extracurricular activities and his difficulties in finding a reliable lay reader to help correct student papers.

Regarding the failure to keep proper student records, the evidence tends to establish that Agnos did not keep his own records up to date during the 1973-74 school year. There was, however, testimony that during both that year and the next he had turned in daily attendance cards from which a computer printout was made. As for Agnos' own records for the 1974-75 school year, although it was alleged that they were inaccurate, neither those records nor the testimony of any person who had seen them as to their content was presented. The evidence against Agnos consisted of statements of persons regarding how Agnos' own statements relating to attendance of one student failed to match other records of her attendance. The other records referred to were not introduced in evidence. Agnos admitted to inaccuracy in his records due to placing incorrect dates over columns.

The charge that Agnos did not mail out required failure notices was admitted by Agnos, but with explanations. During the 1973-74 school year he had decided not to do so on the basis of his prior contacts with the parents and students concerned. Agnos testified that the next year he had prepared such notices, but was unable to mail them before the deadline because the school was unexpectedly closed by snow. Agnos stated he did telephone each of the parents of students in danger of failing; however, because this notice was technically deficient, one of the students was able to challenge her failing grade and received a D rather than an F.

Respecting the fourth charge, Agnos admitted that he had called

some students "knuckleheads" or "ring-a-lings," but said he did so only jokingly and to students with whom he had good rapport and who he believed could take it. None of the students toward whom such remarks were addressed testified against Agnos, but a letter was presented from the mother of student Mark Fertel in which she complained that Agnos had persisted in pronouncing her son's name "Fertile."

Student Sheryl Pearlman testified that when she told Agnos she thought a story the class read about a woman beaten on a bus was too "gory" he told her she should see a psychologist. She did not complain of the incident until the end of the school year. Student Kathy Torres testified that on one occasion Agnos had responded to a question by merely staring at her. Agnos explained that she had asked about using books on a take-home examination, and he felt that any further comment by him on this point might be misconstrued.

The District contends that the final charge, that the interests of the District require Agnos' dismissal was supported by the foregoing evidence, by testimony that Agnos was the target of an extraordinary number of complaints, and by testimony indicating that he was not a good teacher. Several students testified that they had learned little in Agnos' class and that Agnos was unable to answer their questions on grammar. They also mentioned an essay assigned on the topic, "The quality of mercy is not strained," and complained that Agnos had refused to explain the topic to them. Agnos testified that the essay was an exercise in creative writing and that its significance was revealed to the students when they came across the same topic in "Merchant of Venice." Several students testified on Agnos' behalf, saying he was tough but fair and had taught them to work in school whereas other teachers were easy graders.

The hearing officer found that "the explanations advanced by [Agnos] are credible and plausible enough to counter any charge that [he] was so negligent in [returning student work] that his students were adversely affected * * * overall this charge is not serious enough to be sustained." As to the charge of failure to keep records, the hearing officer found that the "testimony and evidence indicates no serious failure in this regard which would adversely affect [Agnos'] teaching record." A similar finding was made as to the charges of failure to notify parents and improper conduct towards students. Regarding the fifth charge, the hearing officer concluded that the various charges "do not add up to a record which would support the Board's claim that [Agnos'] conduct is such that the interests of the School District requires [*sic*] his dismissal."

Administrative findings as to fact and gravity will not be disturbed on review unless they are unsupported by the evidence. *Epstein v. Civil Service Com.* (1977), 47 Ill. App. 3d 81, 361 N.E.2d 782, *cert. denied*

(1978), 435 U.S. 911, 55 L. Ed. 2d 502, 98 S. Ct. 1463; *Samter v. Department of Public Welfare* (1956), 9 Ill. App. 2d 363, 132 N.E.2d 810. ■ In reviewing the evidence presented before the hearing officer, we cannot say that his finding that the facts proven did not constitute cause for dismissal was contrary to the manifest weight of the evidence. The evidence does not establish that Agnos' conduct was intentional, nor that the matters in regard to which he was negligent were of great consequence, nor that his behavior toward students was seriously improper. Accordingly, the hearing officer's finding that cause was not shown will not be disturbed. See *Kreiser v. Police Board*; *Epstein v. Civil Service Com.*; *Caliendo v. Goodrich.*

In view of our disposition of the merits of this case, it is not necessary to reach Agnos' contention that the hearing before Epstein was improper because it was not held within the period specified in section 24—12 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 24—12).

Affirmed.

DOWNING and PERLIN, JJ., concur.