BOARD OF EDUCATION OF SCHOOL DISTRICT NO. 131, Plaintiff-Appellee, *v.* ILLINOIS STATE BOARD OF EDUCATION *et al.*, Defendants-Appellants.

Second District   No. 79-29

Opinion filed April 1, 1980.—Rehearing denied May 9, 1980.

Hirsh and Schwartzman, of Chicago, for appellants.

Lambert M. Ochsenschlager and Wayne F. Weiler, both of Reid, Ochsenschlager, Murphy & Hupp, of Aurora, for appellee.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, Board of Education for School District 131 (the Board), discharged defendant, John P. Murray III, from his position as a teacher of educable mentally handicapped (EMH) students at Aurora East High School, on April 4, 1977. His discharge was reversed, and he was ordered reinstated following an administrative hearing. (Ill. Rev. Stat. 1977, ch. 122, par. 24—12.) The Board sought administrative review (Ill. Rev. Stat. 1977, ch. 122, par. 24—16), and the Circuit Court of Kane County reversed the decision of the hearing officer as against the manifest weight of the evidence. Murray appeals.

Murray was hired as a full-time teacher by the Board in 1966, and assigned to teach EMH students at East High School in 1969. The record fails to disclose any evaluations of Murray for the school years beginning in 1969 and 1970. An evaluation for the 1971-72 school year, while favorable in part, criticized Murray in two areas: (1) classroom discipline

and control, and (2) teaching techniques in that his teaching assignments lacked structure and he failed to give clear instructions to the students. Again the record fails to disclose further evaluations for the school years beginning in 1972 and 1973. Near the end of the 1974-75 school year, Murray again received a partly unfavorable evaluation although it was less adverse than the earlier evaluation and its criticism could be characterized as constructive.

Murray was on sick leave from October through December 1975. The record discloses that in October, he accused certain teachers of participating in a "sex ring" with female students and that this charge was never substantiated. Murray returned to his teaching position in January 1976.

Most of the evidence at the administrative hearing concerned Murray's performance in the 1975-76 and 1976-77 school years. In January of 1976, an evaluator criticized Murray for failing to schedule constructive activities for his class. In February of 1976, Murray was similarly criticized for his handling of a classroom assignment, which was the reading of a play. A conference was held with the school administration as a result, and Murray was advised that his teaching methods were deficient in that he failed to plan for classes, failed to maintain an adequate standard of instruction, and failed to complete the department's assigned duties.

In March of 1976, defendant was again observed and criticized for his lack of instructional planning. A formal evaluation found Murray deficient in a number of areas including rapport with students, familiarity with subject, variety of teaching techniques, effectiveness of class activity, and teacher's evidence of preparation. The evaluation also stated that Murray showed some improvement, but that the deficiencies listed in the February conference memo still had not been completely removed. Murray was rehired for the next school year, but was not awarded a salary increase.

Murray was issued a formal notice to remedy in April of 1976 which listed the following deficiencies in his performance as a teacher: (1) failure to provide effective instructional planning, (2) failure to maintain positive learning activities, and (3) failure to cooperate with colleagues in department-related matters. However, Murray was rehired for the 1976-77 school year.

Close supervision and observation of Murray continued throughout the 1976-77 school year. Written reports were compiled as a result of this observation and four of the five reports in the record were critical, while one could be considered complimentary. On February 4, 1977, Murray was advised again of deficiencies in his teaching performance. A written list citing failure to plan effectively for class, failure to establish the proper

rapport with students, and failure to create an atmosphere conducive to learning, and giving examples of each alleged failure was given to Murray. Murray signed a statement that he had discussed this report with school administrators and that he felt 45 days was an adequate length of time to remedy all of these deficiencies. On February 22, 1977, a second formal notice to remedy was sent to Murray by the Board. This notice mirrored the deficiencies noted in the February 4 memo. Murray was closely monitored during March of 1977. These evaluations, which are discussed in some detail below, were partially unfavorable; however, each noted that Murray was making some improvement.

On April 4, 1977, the Board voted to dismiss Murray for cause. The first reason listed for dismissal was that Murray had failed to remedy the deficiencies cited in the February 22 notice to remedy. Also listed were four general charges: (2) negligence, (3) insubordination and failure to cooperate with supervisors, (4) incompetency, and (5) that the best interests of the school required his dismissal. A bill of particulars was also filed by the Board in an effort to clarify the general charges (*i.e.*, 2 through 5) of the dismissal notice.

A hearing was convened as required by statute. A detailed written memorandum and special findings of fact were made by the hearing officer. The hearing officer reversed Murray's discharge of April 4, and ordered his reinstatement as a teacher with full tenure rights. On administrative review, the circuit court reversed, ruling that the hearing officer's decision was against the manifest weight of the evidence. Murray appeals.

■■ The purpose of section 24—12 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 24—12) is to assure teachers of experience and ability a continuous service and rehiring based upon merit rather than upon reasons that are political, partisan or capricious. (*Relph v. Board of Education* (1977), 51 Ill. App. 3d 1036, 366 N.E.2d 1125.) On administrative review, this court must determine whether the procedures required by law were followed and, if so, whether the decision of the finder of fact was against the manifest weight of the evidence. (*Fender v. School District No. 25* (1976), 37 Ill. App. 3d 736, 347 N.E.2d 270.) The Board cites cases (see, for example, *Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, 365 N.E.2d 322) for the proposition that the finding of a school board must be sustained unless found contrary to the evidence. However, these cases predate the present dismissal procedure which provides for the appointment of an independent hearing officer in teacher dismissal disputes. (*Grissom v. Board of Education* (1979), 75 Ill. 2d 314, 388 N.E.2d 398.) Under the now controlling statutory provisions "[o]nly one decision based on the evidence submitted is provided for, and this is the decision of the appointed hearing officer." (*Board of Education*

*v. Epstein* (1979), 72 Ill. App. 3d 723, 726, 391 N.E.2d 114, 116.) Thus the general issue presented by this appeal is whether the decision of the hearing officer reinstating Murray is against the manifest weight of the evidence. The more specific issues are (1) whether the hearing officer erred in striking charges 2 through 5 of the Board's dismissal notice, and (2) whether the hearing officer erred in finding that the Board failed to provide a reasonable remediation period and that its first charge of a failure to remedy is not supported by the evidence.

### CHARGES 2 THROUGH 5

The hearing officer struck charges 2 through 5 on the bases that the Board failed to make a finding of irremediability with respect to these charges, that these charges were excessively vague, and that in any event they were unsupported by the evidence. The Board seeks to assign error to the striking of these charges on a number of alternative grounds. Thus the Board argues that the charges are in fact irremediable or that its notices to remedy, which are the heart of charge 1, also satisfied the statutory notice to remedy requirements with respect to the general allegations contained in charges 2 through 5.

■ Under section 24—12 of the School Code, if the charges against a teacher are considered remediable the school board must give the teacher specific written warning of the causes, which if not removed, may result in dismissal. The test for determining remediability is well settled. A cause for dismissal is irremediable if damage has been done to the student, faculty, or school, and the conduct resulting in such damage could not have been corrected had the teacher been warned by his superiors. (*Gilliland*, 67 Ill. 2d 143, 153, 365 N.E.2d 322, 326.) In the *Grissom* case our supreme court facing a similar situation reasoned as follows:

> "* * * The three standing charges of failure or inability to maintain discipline, inability or unwillingness to convey proper classroom instruction, and failure or refusal to act upon suggestions or instructions of the principal or superintendent, as well as the cited specific instances attributed to plaintiff, are all of a re- mediable nature. The charges are serious and there is evidence to support the charges. But the board has failed to demonstrate that the damage to the students, faculty or school has been of such a severe nature as to justify not giving the required warning (Ill. Rev. Stat. 1973, ch. 122, par. 24—12); and it has failed to show that the conduct resulting in that damage could not have been corrected even if the warning had been given." (75 Ill. 2d 314, 332, 388 N.E.2d 398, 405.)

The court then went on to reverse the teacher's dismissal on the basis that no notice to remedy had been given.

■■ Applying these standards to the instant case, we hold that the hearing officer's determination that charges 2 through 5 were remediable is not against the manifest weight of the evidence and that he did not err in striking these charges. We are unpersuaded by the Board's alternative argument that its notices to remedy were meant to apply to these charges. This argument amounts to an admission that charges 2 through 5 were nothing more than general conclusions based upon charge 1. Under this alternative, the latter charges are merely redundancies adding nothing to the Board's case, and thus no prejudice can be assigned to the action of the hearing officer in striking charges 2 through 5.

In a related matter, the hearing officer granted a motion by Murray to exclude from consideration all matter prior to the 1976-77 school year. In light of the above discussion, the granting of this motion can be sustained on the basis that charges 2 through 5 were properly stricken, thereby rendering evidence prior to the second notice to remedy irrelevant. Thus we see no need to comment on the other basis offered by the hearing officer for his granting of this motion.

### FAILURE TO REMEDY

With respect to the remaining charge of a failure to correct the deficiencies cited in the February 22 notice to remedy, the hearing officer found that the Board had not given Murray a reasonable remediation period, and further that the post-notice evaluations indicated that Murray had in fact remedied the alleged deficiencies. The Board argues that Murray had agreed to a 45-day remediation period to run from February 4 through March 21, 1977, and that the evaluations support the Board's decision.

■ If, following a notice to remedy, a remedial deficiency is not corrected within a *reasonable period of time*, it may be grounds for discharge. (*Paprocki v. Board of Education* (1975), 31 Ill. App. 3d 112, 334 N.E.2d 841.) In the instant case, the Board's second notice to remedy was dated February 22, 1977, and the Board voted to dismiss Murray on April 4, 1977. As noted above, the Board relies on Murray's agreement to a 45-day trial period to justify its quick action. However, we find serious problems with the Board's position on this issue. A remediation period is only triggered by official school board action; unofficial notices given by school administrators are not controlling. (*Litin v. Board of Education* (1979), 72 Ill. App. 3d 889, 893, 391 N.E.2d 62, 64; see also *Paprocki*, and Ill. Rev. Stat. 1977, ch. 122, par. 24—12.) Thus Murray was given at most only 41 calendar days between his notice to remedy and his dismissal, and

not the full 45 days agreed upon. Moreover, we believe that the Board has misunderstood the meaning of a remediation period. The Board argues that its reliance on calendar days before *dismissal* is justified. Murray, on the other hand, points out that only 15 school days elapsed between his receipt of the notice to remedy and his *final observation* on March 21, 1977. Murray was evaluated five times between March 8 and March 21, 1977. The Board seeks to rely on these five evaluations to support its dismissal of Murray. In order to assure Murray his statutorily protected opportunity to remediate, we believe it was incumbent on the Board in this case to ground its dismissal decision on observations and evaluations made *after*, and not during, the agreed upon remediation period. Observations during the remediation period could be properly used to evaluate improvement, but the absence of any evaluation at the conclusion of the period made it impossible for the Board to make a reasoned decision.

■ The absence of a reasonable remediation period is made all the more critical in this case by the fact that the March evelutions indicated that Murray was making progress toward correcting his alleged deficiencies. Some of these evaluations criticized Murray in the areas cited in the notice to remedy. Others, however, contained words of praise such as "You did a nice job in conducting the discussion" and "Weekly lesson plans prepared and utilized." In general, the administrators making these evaluations found Murray's performance improved, but that further improvements were needed. In this regard, the last evaluation conducted on March 21 bears reproduction in detail:

> "Upon entering the class all five Math I students were attentively engaged in following Mr. Murray's blackboard examples of multiplication as printed in book. Mr. Murray had just previously disciplined two students and eventually they returned to class ready to work. John did not let the young man 'take over' as he has done on similar occasions. The boy asked twice to discuss his problem but John said wait till the end of the period—'I'll give you 5 minutes,' which he stuck by and provided 5 minutes in the hall doorway near the end of the period.
>
> Math I students practiced the assigned problems, following explanations while Math II students were advised their assignments on portions (fractions). The board examples from the book appeared to be 'over the students' heads' and not on the level necessary to get multiplication across.
>
> Overall observation:
>
> > (1) Improvement in technique obvious. Showing effort to do what is requested.

(2) Need more *practical application* than provided in book. ex[ample]: * * *

(3) Conduct of students greatly improved.

(4) The lesson plans appear vague or all encompassing and not directed; however, the fact that John is using some means to guide his instruction is somewhat of an improvement over previous years.

Raymond Collier

Principal." (Emphasis in original.)

In sum, it is our view that the hearing officer's determination that the Board failed to give Murray a reasonable remediation period to correct his alleged deficiencies is supported by the evidence.

For the foregoing reasons, the order of the Circuit Court of Kane County is reversed and this cause is remanded with directions that the Circuit Court order Murray's reinstatement and make a determination of the issue of damages. Ill. Rev. Stat. 1977, ch. 122, par. 24—12.

Reversed and remanded with directions.

SEIDENFELD and NASH, JJ., concur.