JAMES KAPSALIS *et al.*, Plaintiffs-Appellees, v. THE BOARD OF FIRE & POLICE COMMISSIONERS OF THE CITY OF BURBANK *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 85—1036

Opinion filed May 6, 1986.

Vincent Cainkar, of Louis F. Cainkar, Ltd., of Chicago, for appellants.

Frank J. Hucek, of Berwyn, for appellees.

JUSTICE SCARIANO delivered the opinion of the court:
Plaintiffs, James Kapsalis and John Marozas, where discharged from their jobs as police officers in the city of Burbank police force without prior notice or a hearing. The city of Burbank, its board of fire and police commissioners, and individual commissioners, all defendants in this action, now appeal from the circuit court's order remanding the cause to the board for a new determination. The par-

ties have stipulated that all the facts that apply to plaintiff Kapsalis also apply to plaintiff Marozas.

Before 1982, the city of Burbank had no police force of its own and had contracted to have its police work performed by the Cook County sheriff's department. Between 1972 and the time of suit however, the city had disbanded and re-created the board of fire and police commissioners (the board) a number of times. On August 25, 1982, the city council appointed a new chief of police and approved a motion to advertise for police recruits in suburban newspapers. A "Legal Notice," later published in the *Daily Southtown Economist,* stated: "Successful applicants will attend a school for patrol officers and will be subject to a probationary period of two years." The minutes of the city council meeting do not indicate whether the wording of any ads or the question of the appropriate probationary period were discussed.

On September 22, 1982, the Burbank city council passed an ordinance once again creating a board of fire and police commissioners, but denying the board authority to hire police officers. The ordinance provided that the board should have those powers enumerated in section 10—2.1—17 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 10—2.1—17), which outlines the procedures to be used in discharging police officers. The statute makes no reference to a probationary period.

At a city council meeting on October 8, 1982, 22 candidates for police officer were sworn in, including plaintiffs. The minutes of the meeting state:

"Treasurer Klein asked for a motion to change the rules and regulations to allow for coverage of medical and life insurance during the 90 day probationary [period] for these recruits and any employee, at the employees expense. *** Motion carried."

The candidates were hired by the council and told to report to the police academy on the following Monday. The chief of police filed an affidavit in the trial court that he notified each police officer hired that all new officers would be required to serve a two-year probationary period. Plaintiff John Kapsalis filed a counteraffidavit stating that he was never told by any person, at any time, that he would be hired on a two-year probationary period.

On December 8, 1982, the city council passed ordinance No. 39—11—82, which established a police department and created the position of patrolman, to which plaintiffs had been appointed. Nothing in the ordinance referred to a probationary period for full-time employees. Plaintiffs graduated from the police academy on December 17,

1982. In January 1983, plaintiffs receives notices of salary increases, effective january 1, 1983. The notification form states: "Reason for the change *** probationary period completed." This must have been a reference to the 90-day probationary period, although in reality, only 85 days had passed since plaintiffs were hired.

On March 9, 1983, the city council passed ordinance No. 9—2—83, which established a two-year probationary period for new police officers except those who were former members of another department. The ordinance was later amended, on April 7, 1983, to its current version, requiring a two-year probationary period for all new police officers who were former members of a *regular* police department of *another municipality*. The ordinance was to take effect immediately upon its passage.

On December 28, 1983, both plaintiffs were separately told by the chief of police that their employment was terminated effective immediately. They were given a letter at the same time that simply stated:

> "This is to notify you that you have failed to meet the standards of [the] Burbank Police Department during your probationary period.
>
> We regret to inform you that upon receipt of this letter, your duties as a Police Officer are terminated.
>
> Burbank Fire & Police Commission"

Plaintiffs were hired on October 8, 1982, and discharged on December 28, 1983. The parties agree that probationary employees can be fired for any reason and are not entitled to a pretermination hearing or prior written notice of charges. (See *Romanik v. Board of Fire & Police Commissioners* (1975), 61 Ill. 2d 422, 425, 338 N.E.2d 397, 399; City of Burbank ordinance No. 9—2—83.) On the other hand, upon the applicable city ordinance in effect at the time, officers who had achieved permanent status could only be discharged for cause and would thus be entitled to due process protections, including a right to notice of charges and an opportunity to be heard prior to discharge. (*Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 538, 546, 84 L. Ed. 2d 494, 501, 506, 105 S. Ct. 1487, 1491, 1495; City of Burbank ordinance No. 9—2—83.) Pursuant to its home-rule power, the city council declared section 10—2.1—17 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 10—2.1—17), which sets out procedures for the discharge of nonprobationary officers, to have no force and effect in the city; but it provided very similar procedures in its own ordinance (ordinance No. 9—2—83).

Defendants moved for summary judgment, which the circuit court denied, and the court instead entered judgment for plaintiffs. The

court concluded, in a written opinion, that plaintiffs had a right to rely on the notice sent by the payroll department on January 6, 1983, that they were subject to a 90-day period of probation, which had clearly ended by the time plaintiffs were fired. Section 130.11 of the 1983 regulations of the board of fire and police commissioners provides:

> "At the completion of the probationary period, if the appointee has proved himself, and his conduct and capacity are satisfactory, the appointment shall be deemed complete *and affirmed in writing to the probationer*." Emphasis added.

It is very difficult for us to determine, on the basis of the record before us, precisely what the length of plaintiffs' probation really was. the record contains various ordinances concerning the employment of police officers. While it is apparent that the board of fire and police commissioners changed several times between 1972 and the time of the judge's decision, it is unclear whether the parties have provided us with a complete picture.

Plaintiff Kapsalis filed an affidavit stating that when he was first hired he was told that his employment would be subject to a handbook entitled "Administrative Rules and Regulations, City of Burbank." Section 1.5.1 of the rules provides:

> "Any person employed in a full-time position shall, prior to being accepted into full employment status, successfully complete a probationary period of three months."

Defendants correctly note that preceding this rule is a statement that "[t]he provisions herein contained shall not apply to any elected City Official or any employee who is governed by the Board of Fire and Police Commissioners." Plaintiffs counter that ordinance No. 57—2—79, which was passed on July 25, 1979, created a board of fire and police commissioners but expressly stated, "The provisions of this article shall apply only to full-time firemen" (City of Burbank ordinance No. 57—2—79, sec. 2—336). Thus, plaintiffs argue that they were not governed by the board and the rules in the handbook applied to them. However, ordinance No. 22—2—82 was passed on September 22, 1982, before plaintiffs were hired, and it provides that the provisions of the article governing the board "shall apply only to *full-time policemen* and full-time firemen." (Emphasis added.) (Ordinance No. 22—2—82, sec. 2—336.) Plaintiffs filed a copy of the city council minutes for a meeting held on December 8, 1982, when members of the newly created board were first appointed. Plaintiffs assert that since the board had been created but not organized when they were given

the handbook, rule 1.5.1 applied to them. Defendants argue, finally, that a 90-day probationary period was never authorized and is unrealistic because it would give the city less than a month after police academy instruction to judge an officer's performance in the field.

Rules and Regulations for the Board of Fire and Police Commissioners, effective October 3, 1972, provided for a one-year probationary period of active duty for police officers. Defendants therefore concede that at the time that plaintiffs were hired they were at most subject to probation of one year, under this rule. Defendants were discharged nearly 14 months after they were hired, and it is, fortunately, unnecessary for us to determine which of the two probationary periods applied in order to decide this case. Plaintiffs completed both periods.

Nonetheless, defendants argue that ordinance No. 9—2—83, enacted after plaintiffs were hired, extended plaintiff's probationary period to two years from the time of their initial employment. Plaintiffs assert, on the other hand, that to include them in the extension of the probationary period to two years would violate due process. Our supreme court was faced with a similar contention in *Scott v. Rochford* (1979), 77 Ill. 2d 507, 509-10, 397 N.E.2d 801, 802; however, it did not reach the question because the rule purporting to extend the probationary period was not properly published and was therefore inapplicable to the plaintiff (77 Ill. 2d 507, 512, 397 N.E.2d 801, 803). In addition, there is a First District Appellate Court case, *Schmidt v. Personnel Board* (1980), 89 Ill. App. 3d 434, 411 N.E.2d 1060, that is quite similar to the present one. In that case, the plaintiff was hired as a patrol officer on April 4, 1977, and given a nine-month probationary period. A new rule went into effect on December 1, 1977, that extended the probationary period to one year. The plaintiff was discharged, without a hearing and without having been given any reasons, on February 24, 1978, more than nine months, but less than a year, after he had been hired. the appellate court, per Justice Simon, held that the rule change operated prospectively, affecting only those officers who joined the force after December 1, 1977. The court noted:

> "By adopting [this] interpretation it is unnecessary to address the perplexing issues of whether a vested property right is involved here or whether the fundamental notions of justice embodied in the due process clauses of the Federal and Illinois Constitutions forbid a rule that allowed the Director [of Personnel] to change the length of the term midway in an officer's probation. Courts have a duty in construing rules to interpret

in such a way as to avoid any construction that would raise doubts of the rule's validity. [Citation.]" 89 Ill. App. 3d 434, 436-37, 411 N.E.2d 1060, 1062.

In the present case, there is a factual dispute over whether plaintiffs were told of a two-year probationary period by the chief of police. However, defendants have cited no authority to suggest that statements by public officials can supersede city ordinances or regulations that have a contrary effect. Defendants now concede that at the time that plaintiffs were hired they were, at most, subject to a one-year probationary period under the rules of the board. Defendants must rely solely on ordinance no. 9—2—83, adopted five months after plaintiffs were employed, to support their argument that plaintiffs were covered by a two-year probationary period. In relevant part, the ordinance provides:

"Sec. 2—345. Probationary periods.

All new members of the fire and police departments shall serve the following probationary periods:
   ***

(b) For policemen—one year for all new members who were former members of a regular police department of a municipality and who have been certified by the Illinois Local Government Law Officers Training Board as having successfully completed an approved basic training course.

(c) Two years for all other firemen or policemen new members.

All new members are subject to dismissal in the probationary period by the board, without a hearing and without assigning cause."

As noted in *Schmidt v. Personnel Board* (1980), 89 Ill. App. 3d 434, 436, 411 N.E.2d 1060, 1062, the word "shall" is forward looking, suggesting that service is a thing in the future. It would seem to indicate that the period is to be determined as of the date of appointment, so that a new officer knows the length of probation he will serve, and that it is fixed on the date of the original appointment.

Defendant filed an affidavit signed by Edward Skrypek, the chairman of the board of fire and police commissioners, which states:

"2. [A]ll references in the Rules and Regulations of the Board of Police Commissioners in Section 130.10 [which is worded identically to Section 2—345 of the ordinance quoted above] to 'new members' has [*sic*] been interpreted by the Board and the City Council to mean those police personnel hired by the City

of Burbank who had no prior police experience and who had not been certified by the Illinois Local Government Law Enforcement Officers Training Board."

Since it is undisputed that plaintiffs had no prior police experience, the clear intent of Skrypek's affidavit is to show that plaintiffs were "new members" and that the two-year probationary period applied to them under the terms of the ordinance. However, we cannot accept Skrypek's proposed construction.

■■ ■ Construction of an ordinance is a question of law for the court (*Oberman v. Byrne* (1983), 112 Ill. App. 3d 155, 160, 445 N.E.2d 374, 378), and cannot be settled by affidavits (see *Village of North Riverside v. Brookfield North Riverside Water Commission* (1973), 15 Ill. App. 3d 752, 754-55, 305 N.E.2d 221, 222-23), which are designed to present facts to the court, not conclusions of law (*Motz v. Central National Bank* (1983), 119 Ill. App. 3d 601, 605, 607, 456 N.E.2d 958, 961, 963; Supreme Court Rule 191 (87 Ill. 2d. R. 191)). While city administrative agencies are entitled to deference in their interpretation of their own regulations and the ordinances that they are charged with implementing (see *First National Bank & Trust Co. v. City of Rockford* (1977), 47 Ill. App. 3d 131, 141-42, 361 N.E.2d 832, 839-40), constructions that would render ordinances meaningless or absurd are to be avoided (*Du Bois v. Gibbons* (1954), 2 Ill. 2d 932, 410-12, 118 N.E.2d 295, 305-06; *Rode v. Village of Northbrook* (1984), 123 Ill. App. 3d 436, 441, 462 N.E.2d 843, 847). We simply cannot accept Skrypek's proposed construction because it would mean that the ordinance and regulation would apply to all officers who had prior police experience and no police experience, and who had been certified and at the same time not certified. In other words, the ordinance and regulation would apply to no one.

■■ Moreover, Skrypek's affidavit does not address what is really the critical question—"New, as of what date?" Defendants now appear to argue that the city council intended the ordinance to mean, "New, as of October 8, 1982" (five months before the ordinance was adopted). However, a less-strained interpretation would seem to be that "new members" refers to those who became new after the effective date of the ordinance. In other words, new would seem to mean "newly hired" after the ordinance became law. When this ordinance went into effect, plaintiffs were not new employees, but had already been serving on the police force for five months, as long a period as any other officer except for the police chief. Had the city council really intended the longer probationary period to apply retroactively to officers who had been hired under a shorter probationary period, cre-

ating a possible constitutional conflict, it could have said so in clear and unequivocal terms in the ordinance. The city council did not. Instead it provided in the ordinance:

"Sec. 2—336 Applicability.

The provisions of this article shall apply only to full-time firemen and full-time policemen. *** All current rules and regulations of the fire and police departments and of the board of fire commissioners and the board of police commissioners, except those in conflict therewith, shall remain in full force and effect unchanged by the passage of this ordinance." City of Burbank Ordinance No. 9—2—83.

██ █ The rules that govern the construction of statutes also apply to the construction of ordinances. (*American National Bank & Trust Co. v. Village of Arlington Heights* (1983), 115 Ill. App. 3d 342, 344, 450 N.E.2d 898, 901.) Enactments cannot be given retroactive application unless there is a clear expression from the legislative body that it intended such a result. (*Coronado v. Fireman's Fund Insurance Co.* (1985), 131 Ill. App. 3d 450, 453-54, 475 N.E.2d 1048, 1051.) Finding no such expression in ordinance No. 9—2—83, we conclude that plaintiffs were not subject to the two-year probationary period.

██ Plaintiffs were discharged more than one year after they were hired. The circuit court concluded that a 90-day probationary period applied to plaintiffs. As noted above, the only basis for defendant's contention that plaintiffs were subject to two years' probation is ordinance No. 9—2—83. However, we conclude that this ordinance did not apply to plaintiffs, and that plaintiffs were discharged improperly.

As Justice Simon has pointed out:

" 'The purpose of the probationary period is to enable the appointing officer to determine whether a permanent appointment is desirable. That question is left solely to his judgment, and he has the whole probationary period in which to decide it.' [Citation.] The Director [of Personnel] does not, however, have more than the probationary period. The personnel rules create an expectation that the probation will continue until the officer is discharged or receives a permanent appointment. They do not allow the Director to adopt the third option of extending the officer's term to give city officials several more months in which to reach a decision.

This interpretation of the rules is consistent with notions of common sense and fair play. Because probation is a time for testing new employees, a time for the probationary officer to show especially excellent behavior, the officer should know spe-

cifically how long the probation will last. * * *

This interpretation is also in line with the fundamental tenet of justice summarized in the admonition about not changing the rules in the middle of the game. It is impossible to tell if [the plaintiff] would have accepted the original appointment had he known the probationary term was 12 months instead of 9." *Schmidt v. Personnel Board* (1980), 89 Ill. App. 3d 434, 436, 411 N.E.2d 1060, 1062.

The circuit court declined to order reinstatement and backpay for plaintiffs, but plaintiffs have not cross-appealed that decision, consequently we have no occasion to comment on its correctness. (See *Mid-West National Bank v. Metcoff* (1974), 23 Ill. App. 3d 607, 610, 319 N.E.2d 336, 340.) We affirm the decision remanding this case for to the board for further proceedings.

Affirmed.

STAMOS and HARTMAN, JJ., concur.