THE BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT 508, Plaintiff-Appellant, v. RONALD McKINLEY *et al.*, Defendants-Appellees.

First District (2nd Division) No. 86—2791

Opinion filed September 1, 1987.

Appeal from the Circuit Court of Cook County; the Hon. David J. Shields, Judge, presiding.

Jewel S. Lafontant, Andrea R. Waintroob, and Peter R. Bulmer, all of Vedder, Price, Kaufman & Kammholz, of Chicago, for appellant.

Lawrence Jay Weiner and Joan M. Eagle, both of Lawrence Jay Weiner & Associates, P.C., of Chicago, for appellee Ronald McKinley.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff, board of trustees of Community College District 508 (board), appeals from circuit court orders on administrative review which affirmed a hearing officer's reversal of a board employee discharge ruling. The issues presented in this appeal include whether: (1) the hearing officer's ruling was a final administrative decision subject to administrative review; (2) the board satisfied due process pretermination hearing requirements; (3) the hearing officer's decision reversing the board was against the manifest weight of the evidence; and (4) the discharged, tenured employee was entitled to back pay.

Defendant Ronald McKinley was employed by the board as a tenured full-time radiology instructor at Malcolm X College from March 30, 1973, to December 23, 1981. His employment application and his annual employment contracts with the board prohibited his accepting or continuing any "current full-time [employment] position or positions equal to a full-time position" while he remained a full-time teacher. Full-time employment by the board for a professor under board rules was limited to 30 hours per week. The collective bargaining agreement between the board and the teachers' union contained a similar provision. No definitions were set forth in either document of what was meant by "concurrent full-time position," or whether the same 30-hour rule was intended to be applied to the hours spent in outside employment or whether the judgment of whether the outside employment was full- or part-time should be made by the outside employer. The only explanation of what was meant by part-time employment was an unofficial newspaper column authored by the then chan-

cellor of District 508, appearing in the Chicago Tribune of September 10, 1978, which stated that: "Outside employment is another 'right' that full-time faculty have won—up to 99 per cent of a full-time outside job."

Evidence later presented to a hearing officer revealed the facts which follow. Subsequent to his employment by the board, McKinley began working in the radiology department at Norwegian-American Hospital (hospital) on December 16, 1977. Whether his hospital employment was for full-time or part-time employment was the subject of conflicting evidence. Between December 1977 and August 31, 1981, McKinley worked an average of 37.13 hours per week at the hospital. There was substantial evidence supporting his belief that he was actually a part-time employee: hospital employment guidelines defined full-time employment there as 75 or more hours per two-week pay period; his application for hospital employment specified that he was to work 72 hours per two-week pay period and his supervisor testified that he was expected to work only 70 to 72 hours per two-week pay period; the head of the radiology department, his supervisor, stated that McKinley had been hired as a part-time employee specifically due to his teaching responsibilities; McKinley had replaced a previous part-time employee; and McKinley had received full-time benefits merely as an employment inducement because he was a high caliber employee. McKinley also worked about 1½ hours per week as a vocalist at a funeral home after 1976: two or three selections per service lasting five to seven minutes each, as needed.

Evidence which conflicted with, or contradicted, that set forth in the preceding paragraph was also introduced and considered by the hearing officer.

Board policies prohibiting full-time outside employment required employees to complete outside employment disclosure statements beginning in October 1978. McKinley filed disclosure statements on October 18, 1978, March 9, 1979, October 16, 1980, February 17, 1981, and August 20, 1981. He disclosed his employment by the funeral home on each of the statements, but disclosed his employment at the hospital only on the last statement, August 20, 1981, revealing employment of 16 to 20 hours per week. On August 31, 1981, McKinley voluntarily reduced his work period at the hospital to 20 hours per week.

In October 1981, plaintiff's director of labor relations (director) noted McKinley's part-time employment and contacted the hospital for verification. McKinley requested that the hospital disclose only his then part-time employment; nevertheless, the hospital disclosed Mc-

Kinley's entire employment record, first identifying it as full-time prior to August 31, 1981, but later changing the characterization to part-time.

Thereafter, the director recommended to the chancellor of District 508 that McKinley be discharged. The chancellor notified McKinley by letter on October 22, 1981, of his intention to recommend his discharge to the board by reason of McKinley's violation of his employment contracts in working full-time for the hospital. The letter also stated that McKinley could meet with the director and discuss the charge prior to the chancellor's recommendation being made to the board.

McKinley met with the director on October 23, 1981, and attempted to persuade him that his employment by the hospital had been merely part time. The director thereafter reasserted his discharge recommendation to the chancellor, basing it on both McKinley's outside employment and on his false disclosure statements. The chancellor thereafter recommended McKinley's discharge to the board.

On November 3, 1981, the board adopted a resolution discharging McKinley, of which it notified him on November 4, 1981. McKinley requested and received a bill of particulars from the board which specified that his "holding of positions equal to a full-time position with Norwegian-American Hospital and Griffin Funeral Home constitutes a direct violation of a specific condition of employment [and] *** constitutes cause for *** dismissal" and "false and intentional misrepresentations of *** outside employment *** constitutes cause for *** dismissal as a faculty member." He was suspended without pay on December 23, 1981. Up to this point, no evidentiary hearing had taken place.

Meanwhile, on November 10, 1981, McKinley filed a written request for a post-termination hearing as provided by section 3B—4 of the Public Community College Act (Act) (Ill. Rev. Stat. 1985, ch. 122, par. 103B—4). An independent hearing officer took evidence, heard witnesses and arguments on April 20 and May 17, 1982. On August 19, 1983, 15 months later, the hearing officer ruled in McKinley's favor, reversing the board's decision; the hearing officer did not then consider McKinley's alleged misrepresentations in making his ruling.

The board sought circuit court administrative review of the hearing officer's decision on September 19, 1983. (Ill. Rev. Stat. 1985, ch. 110, par. 3—101.) On June 20, 1984, the circuit court vacated the decision of the hearing officer and remanded the case for a determination of the misrepresentation issue. The hearing officer thereafter found

that McKinley had falsified his outside employment disclosure statements but concluded that discharge was too harsh a punishment and accordingly ordered that McKinley be reinstated and that he "suffer no loss of pay due to his suspension."

On October 31, 1984, the board filed a supplemental administrative review complaint. On March 7, 1986, the circuit court affirmed the hearing officer's decision holding that the board's discharge procedures had violated McKinley's due process rights to a pretermination hearing under *Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 84 L. Ed. 2d 494, 105 S. Ct. 1487, and, further, that his punishment by discharge was too severe. The board's motion to reconsider was denied on September 8, 1986. In denying the latter motion, the circuit court issued a 50-page order restating due process and harshness of penalty reasons contained in an earlier ruling by another judge. The court also ruled that the hearing officer's decision was not against the manifest weight of the evidence.

The board appeals.

I

 A preliminary issue raised by the board concerns whether the board's discharge of McKinley, or the hearing officer's reinstatement of him, is the final administrative decision subject to review and therefore entitled to be held *prima facie* true and correct on administrative review. The Act provides that the board's decision is final unless, under section 3B—4, the individual chooses to appeal that decision to a hearing officer, in which case the hearing officer's decision becomes the final administrative decision (Ill. Rev. Stat. 1985, ch. 122, par. 103B—4) and must be accorded the statutory presumption of factual correctness. Additionally, the Act specifically provides that the "Administrative Review Law *** shall apply to *** all proceedings instituted for the judicial review *of final administrative decisions of a hearing officer* under section 3B—4." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 122, par. 103B—6.) Accordingly, the board's contention that the hearing officer's decision was not a final decision by an *administrative agency,* is unsupportable. (See also *Board of Education v. Epstein* (1979), 72 Ill. App. 3d 723, 391 N.E.2d 114; *Board of Education v. Illinois State Board of Education* (1980), 82 Ill. App. 3d 820, 403 N.E.2d 277, *appeal denied* (1980), 81 Ill. 2d 589.) The circuit court correctly so held.

II

 The Board next contends that the circuit court erred in hold-

ing that McKinley had been denied his pretermination due process rights. Due process requires that notice and an opportunity to respond be given. (*Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 546, 84 L. Ed. 2d 494, 506-07, 105 S. Ct. 1487, 1495-96; *Kapsalis v. Board of Fire & Police Commissioners* (1986), 143 Ill. App. 3d 465, 468, 493 N.E.2d 56.) The opportunity to defend one's self and to present reasons, either in person or in writing, why a proposed action is unwarranted is a fundamental requirement of due process. (*Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 546, 84 L. Ed. 2d 494, 506-07, 105 S. Ct. 1487, 1495-96.) A tenured public employee, such as McKinley, is entitled to oral or written notice of the charges against him, an explanation of his employer's evidence, and an opportunity to defend himself against the charges. (470 U.S. 532, 546, 84 L. Ed. 2d 494, 506-07, 105 S. Ct. 1487, 1495-96; *Combs v. Board of Education* (1986), 147 Ill. App. 3d 1092, 1096, 498 N.E.2d 806; *Messina v. City of Chicago* (1986), 145 Ill. App. 3d 549, 560, 495 N.E.2d 1228.) To require more, prior to termination, would be an unwarranted intrusion into the realm of the government's legitimate interest in quickly removing unsatisfactory employees. *Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 546, 84 L. Ed. 2d 494, 506-07, 105 S. Ct. 1487, 1495-96.

■ In the case *sub judice*, the chancellor notified McKinley of the impending action against him and offered him the opportunity to meet with the director. McKinley accepted that opportunity and attempted to explain his previous employment and its nondisclosure to the director. This opportunity satisfied the *Loudermill* requirement that a tenured public employee be accorded at least an informal pretermination opportunity to be heard. 470 U.S. 532, 545-46, 84 L. Ed. 2d 494, 505-06, 105 S. Ct. 1487, 1493-94; see also *Riggins v. Board of Regents* (8th Cir. 1986), 790 F.2d 707, 710-11; *Kelly v. Smith* (11th Cir. 1985), 764 F.2d 1412, 1414-15; *Brasslett v. Cota* (1st Cir. 1985), 761 F.2d 827, 836; *DeSarno v. Department of Commerce* (Fed. Cir. 1985), 761 F.2d 657, 660; *Bockbrader v. Department of Public Institutions* (1985), 220 Neb. 17, 23, 367 N.W.2d 721, 726-27.

The circuit court held that McKinley's due process rights had been violated because he had not had a pretermination opportunity to respond to the charges to the board itself, the actual decision maker. The court's interpretation of *Loudermill* as requiring such a pretermination opportunity was too narrow. Neither employee in *Loudermill*, for example, was given any opportunity to respond to the "charges" against them until after they were discharged (one was discharged for lying on his employment application, the other for failing

an eye examination). (*Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 535-37, 84 L. Ed. 2d 494, 499-501, 105 S. Ct. 1487, 1489-91.) The Supreme Court's concern with the employees' rights stemmed from the complete denial of any pretermination opportunity to be heard, and not from whether a pretermination response was directed to the initial decision maker.

Accordingly, the circuit court erred in holding that McKinley was denied due process. His rights were preserved by his being given the opportunity to meet with the director prior to any board action and on his then being given the statutorily authorized opportunity for a final hearing after his discharge by the board. 470 U.S. 532, 547-48, 84 L. Ed. 2d 494, 507, 105 S. Ct. 1487, 1496.

### III

■ The board asserts that McKinley's actions clearly warranted his discharge and that the contrary conclusion by the hearing officer was in error. The board notes McKinley's outside employment and his failure to disclose that employment when so requested by the disclosure statements, arguing that each, independently, provided cause for discharge. The board's conclusion, although correct in insisting that cause for discipline existed, is not dispositive under the facts of this case. Here, because of the statutory procedure prescribed by section 3B—4, the board's decision is not subject to administrative review; rather, it is present only as a procedural predecessor to the hearing officer's decision, which is the only decision that was before the court on administrative review.

Section 3B—4 of the Act directs the hearing officer particularly to "make a decision as to whether or not the tenured faculty member shall be dismissed." (Ill. Rev. Stat. 1985, ch. 122, par. 103B—4.) The hearing officer is thereby empowered not only to evaluate the facts in a given case, but he or she may also evaluate the propriety of dismissal. Toward that end, the hearing officer is authorized to conduct a full evidentiary hearing.

In Illinois, whether cause for an employee's discharge exists is to be determined by the administrative agency and will not be reversed unless arbitrary or unreasonable. (*Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 551-52, 426 N.E.2d 885.) Here, the decision made by a statutorily prescribed "disinterested hearing officer" was the final agency decision (Ill. Rev. Stat. 1985, ch. 122, par. 103B—6), and cannot be overturned unless it was arbitrary or unreasonable. The hearing officer's decision was premised, in part, upon the absence of any definition specifically

explaining what was meant by "outside full-time employment," according the board leeway to apply it in any manner it chose but leaving the affected employee in doubt, and, in part, upon the board's inconsistent treatment of prior outside employment infractions by other employees and evidenced by the hearing officer's conclusion that dismissal was too harsh a penalty and unwarranted. The hearing officer noted in this regard:

> "The Board has treated such non-disclosure of 'Outside Full Time' employment with varying degrees of discipline—all the way from discharge when such was denied faced with factual evidence, to a one week suspension (reduced to one day) when the employee admitted to such 'Outside Employment' and agreed to cease same."

Coincidentally, the District Court for the Northern District of Illinois had considered disciplinary action taken by District 508 involving 11 tenured, full-time faculty members who had been discharged for violating the board's rule prohibiting concurrent outside employment during time periods overlapping those involved here, 1978-80, and found that the board's failure to actively or consistently enforce the rule before that lawsuit was filed in 1981 resulted in violation of substantive due process and equal protection under the law. *Kaufman v. Board of Trustees* (N.D. Ill. 1982), 552 F. Supp. 1143, 1153-54.

Addressing the sanction of dismissal for cause sought to be imposed by the board, the hearing officer found, among other things:

> "1. Prior to any Board investigation, McKinley did come forward and properly indicate his 'Outside Employment.' It is purely speculative on the part of the Board that such 'Outside Employment' was detrimental to his duties of Instructor in Radiology. As a matter of fact, his duties at the Norwegian-American Hospital as a Radiologist Technician were experientially in concordance with his instructorial duties at Malcom [*sic*] X. College in radiology. Certainly, on a limited duty basis, the Board would benefit from McKinley's work at Norwegian-American Hospital. The invoking of 'Outside Employment' just for sake of the maintenance of a 'Rule' seems utterly ludicrous to this Hearing Officer."

Yet another important observation in this regard was made by the hearing officer after finding McKinley guilty of violating the disclosure rule:

> "However, the crime should fit the penalty. Nowhere and at no time did the Board claim that McKinley was doing less than what was expected of him. Had McKinley faltered because of

inadequacy in his job, then the penalty of dismissal would be appropriate because he failed to properly notify the Board of his 'Outside Employment.' The Board makes no such claim and attempts to impose the highest of penalties where it has not done so in the past under similar circumstances.

Lacking any evidence, except a presumed consequence, the Hearing Officer must conclude that the dismissal for cause of Ronald McKinley was not supported by the Board. McKinley is, of course, not free of a charge of inappropriate conduct and should suffer an appropriate penalty for his lack of a good faith relationship with the Board. Such a penalty for non-disclosure of Outside Employment should be sufficiently severe to act as a deterent [*sic*] to any future employee contemplating the same kind of conduct—but dismissal under the above circumstances is too severe."

■■ ■ Cause for discharge, or dismissal, the precise fact-finding responsibility of the hearing officer under section 3B—4, has been defined by our courts as some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public policy recognize as good reason for his or her no longer holding that position. (*Fantozzi v. Board of Fire & Police Commissioners* (1963), 27 Ill. 2d 357, 360, 189 N.E.2d 275; *Kreiser v. Police Board* (1977), 69 Ill. 2d 27, 30, 370 N.E.2d 511; *Board of Education v. Epstein* (1979), 72 Ill. App. 3d 723, 725, 391 N.E.2d 114; *Burgett v. City of Collinsville Board of Fire & Police Commissioners* (1986), 149 Ill. App. 3d 420, 424, 500 N.E.2d 951.) It was the function of the hearing officer to determine whether the tenured employee's violations constituted cause for discharge (*e.g., Christenson v. Board of Fire & Police Commissioners* (1980), 83 Ill. App. 3d 472, 476, 404 N.E.2d 339, *appeal denied* (1980), 81 Ill. 2d 590), subject to judicial review. (*Lakin v. Gorris* (1983), 113 Ill. App. 3d 1034, 1038, 448 N.E.2d 215, *appeal denied* (1985), 101 Ill. 2d 589; *Thomas v. Police Board* (1980), 90 Ill. App. 3d 1101, 1105, 414 N.E.2d 11.) Based upon the evidence before him, the findings and conclusions of the hearing officer were neither arbitrary nor unreasonable. The circuit court correctly affirmed his decision and must itself be affirmed.

## IV

■■ The board's final argument is that the hearing officer and the circuit court erred in authorizing back pay for McKinley, relying upon the general rule that when an administrative decision is reversed, va-

cated or remanded, the case stands as though no decision had ever been made. Plaintiff's reading of the rule as applied to remandment for a specific purpose, here McKinley's reinstatement with no loss of pay due to his suspension, would deny force to the affirmance orders of both the hearing officer and the circuit court, and would preclude finality in a matter which now has been prolonged for almost six years and has presented a record on appeal of more than 1,200 pages. Instead, we address the merits of the back-pay orders.

Section 3B—4 of the Act provides that "[i]f in the opinion of the Board the interests of the District require it the Board *** may suspend the tenured faculty member pending the hearing, but if acquitted, the tenured faculty member shall not suffer the loss of any salary by reason of the suspension." (Ill. Rev. Stat. 1985, ch. 122, par. 103B—4.) The board suspended McKinley without pay during the pendency of the appeal of his discharge. When his discharge was reversed, however, the question became whether, under the circumstances presented, the hearing officer's agreement with the board that McKinley violated the disclosure rule, but disagreement as to the sanction to be imposed, is tantamount to a statutory "acquittal" and thereby entitled McKinley to back pay under section 3B—4.

A similar situation arose under section 34—85 of the School Code, which provided, correspondingly to section 3B—4 of the Public Community College Act, that a person suspended in accordance with rules prescribed by the board who is acquitted "shall not suffer any loss of salary by reason of the suspension." (Ill. Rev. Stat. 1979, ch. 122, par. 34—85.) In *Carter v. Illinois State Board of Education* (1980), 90 Ill. App. 3d 1042, 414 N.E.2d 153, a tenured employee was awarded back pay under section 34—85 by a hearing officer for a period in which the employee's suspension was found to have been improper. The board in that case challenged the hearing officer's authority to award back pay, to which the appellate court responded:

> "Although the dismissal of the July charges was not an acquittal of Carter, neither was it a finding that the suspension was justified. We feel that this provision fully authorized the award of back pay by the hearing officer in this case." (90 Ill. App. 3d 1042, 1046, 414 N.E.2d 153.)

As in *Carter,* it cannot be said that the board's conclusion concerning McKinley's violation of the disclosure rule was a statutory acquittal; yet, the discharge prescribed by the board was reversed and McKinley was ordered reinstated upon the finding that dismissal was not justified. Under these circumstances, we hold that concept of an award of back pay by the hearing officer, as affirmed by the circuit court, is au-

thorized by section 3B—4 of the Act.

We have already noted the protracted proceedings in the circuit court and before the hearing officer have extended to almost six years. Upon remand, consideration should be given by the board as to how much delay was due to its own actions and those of the hearing officer, and how much was attributable to the actions of McKinley, aside from the statutorily sanctioned procedures followed. Upon McKinley's reinstatement, the board should award appropriate back-pay allowances as demonstrated by the record and provided for by its rules. *Inwang v. Community College District* (1983), 117 Ill. App. 3d 608, 453 N.E.2d 896.

For the foregoing reasons, the decision of the circuit court on administrative review is affirmed, except for the due process pretermination aspect thereof, erroneously based upon *Loudermill,* and the cause is remanded to the board of trustees of Community College District 508 for further action not inconsistent with the opinion herein expressed. See *Kreiser v. Police Board* (1977), 69 Ill. 2d 27, 31, 370 N.E.2d 511.

Affirmed and remanded with directions.

STAMOS and FREEMAN, JJ., concur.