2023 IL App (1st) 230285

No. 1-23-0285

Opinion filed November 8, 2023

Third Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT NO. 508, d/b/a City Colleges of Chicago, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 21 CH 736 |
| | ) | |
| DAVID MIGAJ; ANDREE MCKISSICK, Hearing Officer; and COOK COUNTY COLLEGE TEACHERS UNION LOCAL 1600, | ) ) ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable |
| (David Migaj and Cook County College Teachers Union Local 1600, Defendants-Appellees). | ) ) | Michael T. Mullen, Judge, presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justices D.B. Walker and R. Van Tine concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Board of Trustees of Community College District 508, doing business as City

Colleges of Chicago (Board), appeals from the circuit court order on administrative review that

affirmed a hearing officer's reversal of the Board's decision to dismiss defendant David Migaj, a tenured professor, based on his failure to report to work during a four-day, unexcused absence.

¶ 2      On appeal, the Board argues that the hearing officer's decision was arbitrary and unreasonable because she exceeded her authority under the relevant statute, Illinois Supreme Court precedent, and the Board's rules when she erroneously required the Board to prove that Migaj intended to abandon his job.

¶ 3      For the reasons that follow, we affirm the judgment of the circuit court, which affirmed the final administrative decision of the hearing officer.[1]

¶ 4                                I. BACKGROUND

¶ 5      Defendant David Migaj was a tenured Spanish professor at Wilbur Wright Community College (Wright College) from October 1999 until the plaintiff Board terminated him on March 12, 2020, after he failed to report to work during a four-day, unexcused absence in January 2020. Migaj was part of a collective bargaining unit represented by the Cook County College Teachers Union, Local 1600 (Local 1600). The Board is the governing body of the City Colleges of Chicago (City Colleges), a system of seven community colleges created pursuant to the Public Community College Act (Act) (110 ILCS 805/1-1 *et seq.* (West 2018)). Wright College is part of the City Colleges' system.

¶ 6      Wright College schedules professors every January to work during registration week, when faculty members advise students and prepare to teach for the upcoming semester. Faculty members do not teach during registration week but they are required to participate pursuant to their collective

___

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

bargaining agreement. Migaj signed up to participate in registration week from January 6 to January 9, 2020. He failed, however, to attend registration week during those dates and did not inform anyone at Wright College about his planned absence. Instead, he traveled to Hawaii with airline tickets that were purchased nearly a month earlier in December 2019. Wright College Dean of Instruction Pamela Monaco became concerned after Migaj had not appeared for work that week and contacted him on January 9, 2020. He told her for the first time during that telephone call that he was in Hawaii and was planning to return to campus the next day. He did not mention at that time that he was in Hawaii to attend a funeral. After that phone call ended, Migaj sent Dean Monaco an e-mail explaining that he would use personal days for the missed time.

¶ 7    When Migaj arrived on campus the next day, he met with Dean Monaco regarding his absence. That same day, Migaj submitted for the first time a request to take time off for the trip. Human resources business partner Allison Guengerich told him that he did not have enough personal time to cover four days and could not make a request after the fact. Furthermore, a Wright College staff member informed Migaj about the requirements for bereavement leave. Ultimately, Migaj did not pursue obtaining bereavement leave. Guengerich told Migaj that he would be subject to a predisciplinary hearing on January 16, 2020, for job abandonment, as defined by the City Colleges' work rules and the Board's rules and policies.

¶ 8    The Board charged Migaj with violating section 4.19 of the Board's policies and procedures, which provided that an employee will be considered to have abandoned his employment and shall be subject to termination if he is absent for three consecutive workdays without prior written approval and without speaking directly with his supervisor. Further, the Board's employee manual set forth work rules, and the Board alleged that Migaj violated three

rules regarding being absent without leave, failing to call in advance when tardy or not showing up for work, and conduct unbecoming a public employee.

¶ 9    City Colleges' employee Emily Chu presided over the predisciplinary hearing. Migaj and representatives of Local 1600 attended and presented his case. Chu found that Migaj abandoned his employment and recommended termination as the appropriate remedy for his violation of the three work rules. On March 12, 2020, the Board terminated Migaj's employment, and he appealed pursuant to section 3B-4 of the Act (*id.* § 3B-4). The parties selected the hearing officer, and the hearing was held in August 2020.

¶ 10    Dean Monaco testified that she and the dean of student services had spent a significant amount of time in the 2019 fall semester, ensuring that faculty and union representatives were involved in the planning process for the 2020 spring semester registration week so that faculty felt they had a voice and a role in carrying out their responsibilities under their collective bargaining agreement. This included ensuring that faculty members had the right to choose their own hours for registration week and acquiescing with their request to ensure that their attendance was recorded. Accordingly, the college used sign-in sheets to track the attendance of the faculty members. Monaco testified that the use of the sign-in sheets was "new" and she did not know if the college had used sign-in sheets during prior registration weeks. When Monaco realized that Migaj was not attending as scheduled and had not asked to take leave, she left him a message on his home answering machine and sent him an e-mail.

¶ 11    Monaco testified that when Migaj contacted her by telephone on January 9, 2020, he said that he was visiting Hawaii because his wife wanted to go there, that his absence from registration week was not a big deal, and that he would see Monaco at work on January 10, 2020, to discuss

this. When Migaj and Monaco met on January 10, 2020, Migaj said that he had to go to Hawaii, his absence without prior approval was not a big deal because classes had not started, and he did not know why Monaco was making this into something. Monaco reminded him that he had agreed to work the registration week hours and had a responsibility to the students and his colleagues to attend or let people know if he was not going to show up for work. Migaj responded that he hoped Monaco treated white Americans the way she was treating him. Dean Monaco acknowledged that in March 2019 she had allowed Migaj to use a half personal day when he failed to show up for work without notice.

¶ 12    Guengerich testified that she had reviewed Migaj's employment file and the college's attendance records. A June 21, 2005, letter in Migaj's file showed that he was absent at the end of the semester without giving the college prior notice and the college president gave him a verbal warning after a predisciplinary hearing. The warning stated that his absence was an unacceptable violation of the rules. At that time, Migaj said he had to go to Spain for a family emergency because his grandfather died. Furthermore, the attendance records from August 2015 to January 2020 showed that Migaj had used three or more consecutive personal days on at least three occasions in August 2015, August 2016, and August 2018, during either registration week or faculty development week. His attendance records did not show whether he took any steps to obtain prior approval for his use of that personal time. Moreover, his record did not show that he had received any disciplinary action for that conduct. Guengerich had created a spreadsheet of Migaj's absences from his attendance records, which was admitted into evidence. Guengerich testified that employees who had no more personal days could still take time off but they had to record that time as a zero day and would not be paid for it. Ultimately, Migaj was not allowed to use personal days

or zero days to cover the four days he was absent in January 2020. Guengerich and Wright College President David Potash testified that, to their knowledge, Migaj was the first tenured faculty member at Wright College to be discharged for job abandonment.

¶ 13    Migaj testified that he had to attend a funeral in Hawaii for his wife's grandmother, who died on December 11, 2019. The funeral was originally scheduled to take place during the first week of January but was delayed one week to accommodate out-of-town attendees. He admitted that he knew with certainty by the end of December 2019 that he would miss four days of registration week, but never disclosed his intentions to any Wright College employee or asked for permission to take leave. While in Hawaii, Migaj answered e-mails, made phone calls, and exchanged text messages with students.

¶ 14    Migaj testified that he never took time off when he was teaching and used only his personal days during faculty development week or registration week. He asserted that he was never told that he could not use personal days during registration week. He claimed that he had never been disciplined for missing consecutive days during registration week or faculty development week, nor was he ever told that his missing three consecutive days of work without prior approval was considered to be job abandonment. Migaj had previously used personal days to cover consecutive days off and explained that he always did so after the fact by submitting a certificate of attendance. (Faculty members were paid in arrears and submitted their certificates of attendance to payroll after the pay period.) Migaj had never previously notified his supervisor ahead of time that he was going to be using consecutive personal days. Specifically, Migaj testified that, in 2013, he missed four consecutive days during registration week to go to Spain. He did not provide his supervisor

with advance notice of those absences. Rather, he provided that notice upon his return when he completed his certificate of attendance.

¶ 15     The parties submitted closing briefs to the hearing officer. Migaj's brief argued, *inter alia*, that the Board failed to meet its burden to prove that Migaj intended to abandon his job.

¶ 16     On January 29, 2021, the hearing officer issued an award, finding that although the Board had just cause to discipline Migaj, it did not have just cause to terminate his employment. The hearing officer found that Migaj's actions in missing work on January 6, 7, 8, and 9, 2020, violated Board policies, procedures, and work rules, but other factors mitigated in favor of discipline short of discharge. Specifically, the hearing officer cited the Board's lack of consistent enforcement of its policies and work rules and its acquiescence to Migaj's conduct as the primary factors in favor of lesser discipline. To support these findings, the hearing officer relied on (1) Guengerich's testimony and spreadsheet, which indicated that the Board had previously allowed Migaj to use multiple personal business days in 2015, 2016, and 2018, (2) Guengerich's testimony that no other tenured faculty member had been fired for abandoning employment at Wright College, and (3) Dean Monaco's prior conduct in allowing Migaj to use a half personal day in March 2019, when he failed to show up for work without notice.

¶ 17     Regarding the just cause analysis, the hearing officer cited the book Just Cause: The Seven Tests, by Adolph M. Koven and Susan L. Smith, and considered whether (1) there was a reasonable rule or work order, (2) adequate notice was given, (3) a sufficient investigation was conducted before taking disciplinary action, (4) the investigation was fair and objective, (5) the evidence presented was substantial and there was an adequate basis for taking disciplinary action, (6) equal treatment was applied to the grievant, and (7) the discipline applied was appropriate considering

the grievant's length of service, *i.e.*, the discipline was reasonably related to the seriousness of the problem. The hearing officer found that the first two factors weighed in the Board's favor but the remaining factors weighed in Migaj's favor. The hearing officer found that the prediscplinary hearing analysis failed to consider the Board's lax enforcement of its policies towards Migaj, his 20 plus years of employment, and the collective bargaining agreement's progressive discipline policy.

¶ 18   The hearing officer stated that the record demonstrated that Migaj was the first tenured professor to be charged with job abandonment but the Board treated another employee who engaged in more severe misconduct than Migaj in a more favorable manner. Specifically, R.W., a professor at another college, had failed to teach her online classes, failed to assign homework, and made up grades for imaginary assignments. Nevertheless, R.W. had received a written reprimand rather than a discharge. The hearing officer also found significant Migaj's reliance upon case law delineating the procedural protections afforded to tenured teachers and found inapplicable the Board's case law involving settings outside of teaching.

¶ 19   The hearing officer concluded that the most important factor in her decision was the Board's acquiescence on four occasions when it did not enforce its attendance policy. She stated that the Board could not now invoke its attendance policy and utilize it against Migaj so as to require his termination. The hearing officer ordered the Board to reinstate Migaj with full back pay and issue him a written reprimand. The hearing officer did not address the issue of whether the Board had to prove that Migaj intended to abandon his job.

¶ 20   On February 16, 2021, the Board appealed the hearing officer's final decision to the circuit court. The Board argued that its decision to terminate Migaj was governed exclusively by section

3B-4 of the Act and the hearing officer improperly imported into this matter disciplinary requirements from the collective bargaining agreement between the Board and Local 1600. The Board also argued that the final decision was against the manifest weight of the evidence, clearly erroneous, and arbitrary and capricious.

¶ 21    After briefing and oral argument, the court directed the parties to file supplemental briefs answering whether (1) there was a distinction between the standard applied in arbitration proceedings under the collective bargaining agreement and the standards applied in termination proceedings brought pursuant to section 3B-4 of the Act, (2) the Board was required to establish that Migaj intended to abandon his position to establish dismissal for cause under the Act, and (3) there was a distinction between cause and just cause under section 3B-4 of the Act. The parties timely filed supplemental briefs responding to these questions. On March 8, 2022, the court issued an order remanding the case back to the hearing officer to answer whether, given the hearing officer's consideration of all appropriate factors, the Board demonstrated that there was cause to discharge Migaj pursuant to section 3B-4 of the Act.

¶ 22    The parties submitted supplemental briefs to the hearing officer, who issued her supplemental award on July 13, 2022. She addressed the question posed to her by the court, and her view of the correct answers to the three questions the court had posed to the parties. The hearing officer concluded that the Board still failed to demonstrate that there was cause to terminate Migaj pursuant to section 3B-4 of the Act because his four-day absence during registration week did not amount to a substantial shortcoming that was detrimental to the college or Migaj's students since his absence occurred during four noninstructional days. Moreover, Migaj was performing job duties such as e-mailing and texting students during his absence. Furthermore, there was no

"logical nexus" between Migaj's absence and violation of the work rule and his longstanding fitness as a tenured professor with over 20 years of functional service.

¶ 23    The hearing officer also found that the Board failed to prove by a preponderance of the evidence that Migaj intended to abandon his position because he was cooperative with the Board at all times and demonstrated a definitive willingness to immediately return to the college and continued to teach until he was wrongfully discharged. The hearing officer reaffirmed her prior decision, finding that although the Board failed to demonstrate cause for discharge, it did demonstrate that Migaj should receive the lesser form of discipline of a written reprimand.

¶ 24    On January 13, 2023, after briefing and oral argument, the circuit court entered an order denying the Board's complaint for administrative review and affirming the hearing officer's July 2022 decision. The Board timely appealed.

¶ 25                                    II. ANALYSIS

¶ 26    Our standard of review for a hearing officer's decision in a proceeding under the Act is governed by the Administrative Review Law (735 ILCS 5/3-101 to 3-113 (West 2018)). 110 ILCS 805/3B-6 (West 2018).

> "The proper standard of review in cases involving administrative review depends upon whether the question presented is one of fact, one of law, or a mixed question of fact and law. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). An administrative agency's findings and conclusions on questions of fact are considered *prima facie* true and correct. 735 ILCS 5/3-110 (West 2012). As such, an agency's factual findings are not to be reweighed by a reviewing court and are to be reversed only if they are against the manifest weight of the evidence. *Exelon Corp. v.*

*Department of Revenue*, 234 Ill. 2d 266, 272-73 (2009). Factual determinations are against the manifest weight of the evidence if the opposite conclusion is clearly evident. *Cinkus*, 228 Ill. 2d at 210. Questions of law are reviewed under a *de novo* standard, and mixed questions of law and fact are reviewed under the clearly erroneous standard. *Exelon Corp.*, 234 Ill. 2d at 272-73. A mixed question of fact and law examines the legal effect of a given set of facts. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 391 (2001). Put another way, a mixed question asks whether the facts satisfy the statutory standard or whether the rule of law as applied to the established facts is or is not violated. *Exelon Corp.*, 234 Ill. 2d at 273. An administrative decision is clearly erroneous ' "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." ' *AFM Messenger Service, Inc.*, 198 Ill. 2d at 393, 395 (quoting and adopting the definition of 'clearly erroneous' from *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948))." *Beggs v. Board of Education of Murphysboro Community Unit School District No. 186*, 2016 IL 120236, ¶ 50.

¶ 27    The Board argues that it was empowered to discharge Migaj because there is no dispute that he violated Rule 4.19, which clearly defined job abandonment and dictated that it result in termination. According to the Board, the hearing officer's determination that Migaj violated Rule 4.19 "should have ended the analysis" because that rule focuses on the employee's objective actions and not the employee's subjective intent. The Board contends that once the hearing officer found that Migaj violated its rules and policy, the hearing officer had no alternative but to uphold the Board's decision to terminate Migaj's employment. Put another way, the Board argues that the

hearing officer had no legal authority to find cause for discipline instead of cause for discharge. The Board concedes that the hearing officer makes the ultimate determination of whether the Board had cause to discharge an employee. The Board, however, argues that the hearing officer does not make that decision in a vacuum and cannot ignore the Board's lawfully enacted rules and apply a different standard. The Board asserts that cause is linked to and defined by the Board's rules, so the hearing officer's fact-finding to determine whether cause exists must be done within the confines of the rules established by the Board.

¶ 28    The construction of the Board's rules raises an issue of law that we review *de novo*. See *People ex rel. Madigan v. Illinois Commerce Comm'n*, 231 Ill. 2d 370, 380 (2008). "In construing regulations promulgated by an administrative agency, the same rules used to interpret statutes apply." *LaBelle v. State Employees Retirement System of Illinois*, 265 Ill. App. 3d 733, 736 (1994). "One of the primary rules of statutory construction is that the court should first consider the language of the provision at issue, and, where that language is clear, it should be given effect without resorting to other aids for construction." *Id.* However, an agency's interpretation of an ambiguous provision in its enabling statute or its regulations is entitled to "substantial weight and deference" as an informed source based upon its "experience and expertise" to ascertain legislative and regulatory intent. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 98 (1992).

¶ 29    Section 3-32 of the Act gives the Board the power to establish tenure policies for the employment of teachers and the cause for removal. 110 ILCS 805/3-32 (West 2018). Furthermore, section 3-42 of the Act gives the Board the right to employ personnel and establish policies governing their employment and dismissal. *Id.* § 3-42. Based upon its authority under the Act, the

Board enacted Rule 4.19, which provides that "an employee will be considered to have abandoned his/her employment and shall be subject to termination of his/her employment if *** [t]he employee is absent for three (3) consecutive workdays without prior written approval and without speaking directly with his/her supervisor." Further, the Board's employee manual sets forth the following work rules relevant here.

"Work Rule #1: Absence without leave. Employees will be subject to termination for violations of the Abandonment of Employment Policy. See Article [4.19] of the Board Rules.

***

Work Rule #3: Failing to call in advance when tardy or not showing up for work.

* * *

Work Rule #50: Conduct unbecoming a public employee."

¶ 30    Rule 4.19 is not ambiguous. The plain language of this rule imposes an objective standard by specifying that an employee will be presumed to have constructively abandoned his job and shall be subject to termination if he is absent for three consecutive workdays without prior written approval and without speaking directly with his supervisor. See Black's Law Dictionary 309 (7th ed. 1999) (defining "constructive" as "[l]egally imputed; having an effect in law though not necessarily in fact"). Nevertheless, such an absence by the employee does not automatically result in his termination where the plain language of the rule states that he "shall be subject to termination," which indicates the use of discretion, rather than "shall be terminated," which would indicate that discharge would be mandatory. See Merriam-Webster's Collegiate Dictionary 1172 (10th ed. 1998) (defining "subject" as "to bring under control or dominion[,] *** to make (as

- 13 -

oneself) amenable to the discipline and control of a superior"). Moreover, section 3B-4 of the Act provides that the tenured employee at the hearing for dismissal before the hearing officer "may offer evidence and witnesses and present defenses to the charges" (110 ILCS 805/3B-4 (West 2018)), which indicates that the employee has the opportunity to rebut the presumption of job abandonment or offer evidence in mitigation of that charge.

¶ 31    We disagree with the Board's assertion that the hearing officer's finding that Migaj violated Rule 4.19 "should have ended the analysis." An administrative agency possesses no inherent or common law powers, and any authority that the agency claims must find its source within the provisions of the statute by which the agency was created. *County of Cook v. Illinois Local Labor Relations Board*, 302 Ill. App. 3d 682, 686-87 (1998). Accordingly, the authority of an administrative agency to adopt rules and regulations is defined by the statute creating that authority, and such rules and regulations must be in accord with the standards and policies set forth in the statute. *Gunia v. Cook County Sheriff's Merit Board*, 211 Ill. App. 3d 761, 769 (1991); *Popejoy v. Zagel*, 115 Ill. App. 3d 9, 11 (1983).

¶ 32    Although the Act gives the Board the power to establish tenure policies for the employment of teachers and administrative personnel, causes for removal, and policies governing employment and dismissal, that power is not unrestricted and must be exercised in a manner that is consistent with other sections of the Act. 110 ILCS 805/3-30 (West 2018). The General Assembly limited the Board's ability to discharge a tenured faculty member by requiring that the discharge be for cause and by providing due process procedures and review mechanisms under section 3B-4 of the Act. See *id.* § 3B-4. While the statute allows a community college board to decide in the first instance the existence of cause for removal, if the tenured faculty member challenges that finding

by filing an adequate notice, the faculty member has the right to a review of the case by a disinterested hearing officer who can uphold his discharge or issue him a lesser penalty. *Id.*; see *Board of Trustees of Community College District 508 v. McKinley*, 160 Ill. App. 3d 916, 923, 925 (1987).

¶ 33    This court's decision in *McKinley* further solidified the understanding that a hearing officer can issue a penalty less than discharge pursuant to the authority granted him under section 3B-4 of the Act. In *McKinley*, the Board argued that the hearing officer had no authority to overturn a discharge decision and institute a lesser penalty if he found that the employer had cause for discipline. *McKinley*, 160 Ill. App. 3d at 923. The *McKinley* court disagreed and stated that while the Board was correct in insisting that cause for discipline existed, its decision was not dispositive on the issue of discharge. *Id.* The court explained that "because of the statutory procedure prescribed by section 3B-4, the board's decision is not subject to administrative review; rather, it is present only as a procedural predecessor to the hearing officer's decision, which is the only decision that [is] before the court on administrative review." *Id.* The court went on to hold that:

> "Section 3B-4 of the Act directs the hearing officer particularly to 'make a decision as to whether or not the tenured faculty member shall be dismissed.' [Citation.] The hearing officer is thereby empowered not only to evaluate the facts in a given case, but he or she may also evaluate the propriety of dismissal. Toward that end, the hearing officer is authorized to conduct a full evidentiary hearing." *Id.*

*McKinley* makes clear that the hearing officer, not the Board, makes the ultimate decision when it comes to the discharge of a tenured employee under the Act. The powers afforded to hearing officers by section 3B-4 do not deprive the Board of its power to decide, in the first instance, the

circumstances in which removal for cause may be warranted. Rather, the hearing officer's final decision must comport with her authority under section 3B-4 and follow the due process protections afforded to tenured faculty members that the General Assembly incorporated into the Act.

¶ 34     The Board also asserts that the hearing officer, in rendering her final decision, improperly rejected the applicability of the Illinois Supreme Court's decision in *Board of Education of Rockford School District No. 205 v. Illinois Educational Labor Relations Board*, 165 Ill. 2d 80 (1995), which prohibited an arbitrator from imposing procedures from a collective bargaining agreement because the governing statute already provided for such procedures. *Rockford*, however, is factually distinguishable from this case and does not conflict with or overturn *McKinley*. The issue the court dealt with in *Rockford* was whether a notice to remedy issued to a tenured teacher pursuant to section 24-12 of the School Code (Ill. Rev. Stat. 1989, ch. 122, ¶ 24-12) could be challenged under a just cause arbitration procedure. *Rockford*, 165 Ill. 2d at 91. The Illinois Supreme Court held that the collective bargaining agreement's just cause provision was preempted by section 24-12 of the School Code because the process for dismissal was laid out in the School Code, not the collective bargaining agreement. *Id.*

¶ 35     The Board's citation of *Rockford*, which does not involve the same legal challenge raised in the present case, is unavailing. *Rockford* actually reinforces the *McKinley* decision by holding that a review of a tenured professor's discharge is governed by the governing statute and its incumbent procedures, which is found here in section 3B-4 of the Act.

¶ 36     The Board also argues that the hearing officer's decision is arbitrary and unreasonable because she exceeded her authority under the Act when she applied her own standards to Migaj's

conduct—contrary to the Board's rules. Specifically, the Board argues that Rule 4.19 regarding job abandonment is based on the employee's objective conduct but the hearing officer erred by imposing on the Board the burden to prove that Migaj subjectively intended to abandon his job.

¶ 37    As discussed above, the Board's burden under Rule 4.19 did not require the Board to prove that Migaj intended to abandon his job; the Board proved that Migaj violated Rule 4.19 by showing that he was absent for at least three consecutive days without prior written approval. The hearing officer clearly ruled that the Board proved that Migaj's four-day absence violated Rule 4.19. That rule violation, however, established Migaj's constructive, rather than actual, job abandonment, and he had the opportunity to rebut that presumption of job abandonment by presenting evidence in defense or mitigation as part of the hearing officer's just cause analysis. Thus, the hearing officer's statement that the Board failed to meet its burden to prove by a preponderance of the evidence that Migaj intended to abandon his job is actually more accurately stated as, although the Board established that Migaj constructively abandoned his job by missing at least three consecutive days of work without prior written authorization, the facts showed that Migaj rebutted the presumption of job abandonment or presented sufficient mitigation evidence. As previously stated, a tenured faculty member can be discharged only based on a showing of just cause by the community college board. 110 ILCS 805/3B-2 (West 2018).

¶ 38    The Illinois Supreme Court has stated that

"[t]here are many instances in which three days' absence, without notice, might occur without the slightest indication of resignation or of improper conduct. An employee may be at a distant place, and by reason of weather, or other act of God, unable to communicate with, or to reach, his place of employment; or he may be temporarily ill, or there may be

other legitimate reasons why a failure to give notice of absence would necessarily be excusable \*\*\*." *People ex rel. Polen v. Hoehler*, 405 Ill. 322, 328 (1950).

Whereas a resignation "requires an intent to terminate employment," abandonment "usually involves a clear manifestation of unwillingness to teach." *Brown v. Board of Education, Galatia Community Unit School District No. 1*, 38 Ill. App. 3d 403, 409 (1976). This court, however, has not always clearly expressed this distinction between the concepts of resignation and abandonment. See *Piecuch v. Cook County Sheriff's Merit Board*, 312 Ill. App. 3d 78, 86 (2000) ("for there to be effective resignation or abandonment of employment, the employee must have an intention to relinquish the employment accompanied by an unequivocal act of relinquishment"); *Fruhling v. County of Champaign*, 95 Ill. App. 3d 409, 418 (1981) ("though the two concepts are not identical, effective resignation or abandonment requires an intention to relinquish the employment accompanied by an unequivocal act of relinquishment"). We conclude that the issue of whether the tenured faculty member rebutted the presumption that he violated Rule 4.19 by showing a clear manifestation of his willingness to teach is properly considered as mitigation evidence under the hearing officer's analysis of whether just cause to dismiss the faculty member exists. Any error by the hearing officer by stating that the Board had the burden to prove Migaj violated Rule 4.19 by showing that he intended to abandon his job is harmless because, in context, the hearing officer clearly determined that the Board proved by a preponderance of the evidence that Migaj violated Rule 4.19. Rather, the hearing officer, as discussed below, found that the Board failed to show just cause to dismiss Migaj for this rule violation because Migaj showed, *inter alia*, that he did not intend to abandon his job.

¶ 39 Finally, we review whether the hearing officer's decision finding cause for discipline, and not discharge, is supported by the record and, thus, is not arbitrary and unreasonable. This presents a mixed question of law and fact and is subject to review under the clearly erroneous standard. *Beggs*, 2016 IL 120236, ¶ 63. An agency's decision is clearly erroneous where the court is left with the definite and firm conviction that a mistake has been committed when applying the established facts to the applicable legal principles. *Id.*

¶ 40 The Board dismissed Migaj on a "for cause" basis. In Illinois, a tenured full-time employee of a community college district has a vested contract right in continued employment, subject to termination only upon the occurrence of just cause for dismissal, a reduction in the number of faculty members employed by the board, or a discontinuance of some particular type of teaching service or program. 105 ILCS 805/3B-2 (West 2018). "It [is] the function of the hearing officer to determine whether the tenured employee's violations constituted cause for discharge ***." *McKinley*, 160 Ill. App. 3d at 925. "Cause" connotes some substantial shortcoming rendering continuance in employment in some way detrimental to discipline and efficiency of service; cause is something that the law and sound public policy recognize as a good reason for the employee to no longer hold that position. *Id.*

¶ 41 This court has a highly circumscribed role when reviewing an administrative appeal of a circuit court order affirming the hearing officer. Our role as an appellate court is to review the administrative decision, not the circuit court decision. *Denton v. Civil Service Comm'n*, 277 Ill. App. 3d 770, 773 (1996). On review, we are prohibited from reweighing the evidence or making an independent determination of the facts. *Abrahamson*, 153 Ill. 2d at 88. We are not justified in reversing findings made by the hearing officer, even if an opposite conclusion is reasonable or

given that we might have ruled differently. See *id.* We may not substitute our judgment for that of the hearing officer. See *id.* In making our determination, we may not reevaluate the credibility of the witnesses who testified before the hearing officer. See *Trayling v. Board of Fire & Police Commissioners of Bensenville*, 273 Ill. App. 3d 1, 9 (1995). Finally, if the record contains evidence supporting the hearing officer's decision, it should be affirmed. See *Abrahamson*, 153 Ill. 2d at 88-89.

¶ 42    The hearing officer found the existence of mitigating factors to support a lesser penalty than discharge for Migaj. Specifically, she cited the college's lack of consistent enforcement of its policies and work rules and its acquiescence to Migaj's prior misconduct as the primary factors in favor of lesser discipline. The hearing officer supported these findings with the testimony of human resources business partner Guengerich and Dean Monaco. Based on Guengerich's testimony and her spreadsheet, the hearing officer found that Migaj had been allowed in the past to improperly use multiple consecutive personal days without obtaining prior permission without receiving any discipline. The hearing officer also relied on Guengerich's testimony that no other tenured faculty member had been fired by Wright College for abandoning employment and further relied upon Dean Monaco's prior conduct in allowing Migaj to use a half personal day on another occasion when he failed to show up for work without notice. The hearing officer also found that Migaj had every intention of returning to Chicago to resume teaching his course load for the spring 2020 semester. Additionally, even while he was absent from Wright College, he was answering student questions via e-mail and telephone and, thus, was meeting his advising responsibilities. The hearing officer was right to conclude that, in the case of a tenured faculty member, the Board had

to show more than a mere violation of a written job abandonment rule in order to meet its burden of showing just cause for dismissal.

¶ 43    Applying the appropriate legal standard for cause to the facts of the case, the hearing officer concluded that Migaj's four-day absence during faculty development week did not amount to a "substantial shortcoming." The hearing officer found significant that the missed days occurred during four noninstructional days and, thus, was not detrimental to the college, the Board, or Migaj's students. The hearing officer also found that there was no "logical nexus" between Migaj's absence/violation of a work rule and his longstanding fitness as a tenured professor with over 20 years of functional service. The hearing officer noted that the facts of *McKinley* were "strikingly akin" to Migaj's case and she applied the exact same analysis and rationale that was applied in *McKinley* in reaching her own decision. As in *McKinley*, the hearing officer again identified the Board's lax enforcement of its policies and disparate treatment between Migaj and another tenured faculty member as reasons for why she believed the Board improperly terminated his employment. The hearing officer's legal analysis was reasonable, sound, and supported by the facts presented during Migaj's discharge hearing.

¶ 44    There is no basis for this court to find that the hearing officer acted in an arbitrary and unreasonable manner when she determined that the Board had cause to discipline Migaj but not discharge him.

¶ 45                               III. CONCLUSION

¶ 46    For the foregoing reasons, we affirm the judgment of the circuit court, which affirmed the final administrative decision of the hearing officer that reversed the Board's termination of Migaj's employment and ordered that he be reinstated with back pay and be assessed a written warning.

¶ 47    Affirmed.

---

### *Board of Trustees of Community College District No. 508 v. Migaj*,
### 2023 IL App (1st) 230285

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 21-CH-736; the Hon. Michael T. Mullen, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James D. Thomas and Elliot R. Slowiczek, of Jackson Lewis P.C., of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kurtis Hale, of Poltrock & Poltrock, of Chicago, for appellees. |

---